**C. J. SLUDDEN and Co-operative Legislative Committee, Railroad Brotherhoods in the State of Pennsylvania, Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission and The Pennsylvania Railroad Company, Defendants.**

Civ. A. No. 7680.

United States District Court
M. D. Pennsylvania
Nov. 29, 1962.

Brandon & Shearer, Pittsburgh, Pa., Charles E. Friedman, Harrisburg, Pa., for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., John H. S. Wigger, Atty., Dept. of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant United States.

Robert W. Ginnane, Gen. Counsel, H. Neil Garson, Associate Gen. Counsel, I. C. C., Washington, D. C., for defendant, Interstate Commerce Commission.

Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for defendant Pennsylvania R. Co.

Before KALODNER, Circuit Judge, and SHERIDAN and FOLLMER, District Judges.

FOLLMER, District Judge.

This suit is brought to set aside alleged actions of the Interstate Commerce Commission taken on February 8, 1962, and March 23, 1962, respectively.

This Court has jurisdiction by virtue of the provisions under 28 U.S.C. §§ 2282 and 2284.

The case had its inception on November 29, 1960, when the defendant, The Pennsylvania Railroad Company (hereinafter called Pennsylvania) filed before the Pennsylvania Public Utility Commission (hereinafter called P.U.C.) its application to abandon the intrastate portion of its runs of trains Nos. 638 and 645 operating daily between Harrisburg, Pennsylvania, and Hagerstown, Maryland. The application called for abandonment of all passenger train service on its Cumberland Valley Branch between the City of Harrisburg and the Pennsylvania-Maryland line. After hearings and the filing of briefs, on August 7, 1961, the P.U.C. denied the application. No appeal was taken from that Order.

On January 25, 1962, Pennsylvania filed a Notice under Section 13a(1) of the Interstate Commerce Act as amended in 1958, 49 U.S.C. § 13a(1), and the regulations of the Commission, 49 C.F.R. § 43.1, et seq., proposing to discontinue the operation of the above-designated trains effective February 25, 1962. The Notice provides in part "Persons desiring to object to the proposed discontinuance should promptly notify the Interstate Commerce Commission at Washington, D. C., of such objection and the reasons therefor before February 11, 1962."

Several protests were filed with the Interstate Commerce Commission (hereinafter called I. C. C.) including one filed by the Railway Labor Executives' Association on January 31, 1962. On February 8, 1962, I. C. C., Division 3, concluded not to enter upon an investigation of the proposed train discontinuance, and a notice to that effect was served on February 12, 1962. The notice of the I. C. C. states that the action was taken "Upon consideration of a notice and supporting data filed January 24, (sic) 1962, * * * and of protests received in opposition thereto, * * *"

In accordance with I. C. C.'s notice of February 8, 1962, Pennsylvania discontinued the two trains on February 25, 1962.

Upon receiving a number of protests the I. C. C. on March 23, 1962 dismissed requests for reconsideration of its decision not to enter upon an investigation

of the proposed train discontinuance, stating:

"* * * That section 13a(1) of the Interstate Commerce Act authorizes this Commission to institute an investigation of a proposed discontinuance thereunder only within the 30 days' notice period prior to the proposed effective date;

"* * * that the requests for reconsideration of the aforementioned decision were received after expiration of the 30 days' notice period, that the subject trains have been discontinued, and that this Commission is, therefore, without authority to grant the requested relief:"[1]

On April 30, 1962, the Complaint in the instant action was filed seeking to set aside the action of the I. C. C. in concluding not to enter upon an investigation of the proposed discontinuance of trains as heretofore described in the proceedings initiated by Pennsylvania before the I. C. C. under the provisions of Section 13a(1) of the Interstate Commerce Act as amended. The Complaint alleged that the original action of February 8, 1962, under which Pennsylvania ceased operating the trains was void as having been entered without due process of law, without adequate notice, without permitting the interested parties an opportunity to be heard, and in violation of the due process clause of both the Fifth and Fourteenth Amendments of the Constitution of the United States; that the action of February 8, 1962, without any finding that the trains in question were a burden on interstate commerce, was an invasion of the power of the State of Pennsylvania to regulate its own intrastate train movements and hence is unconstitutional and void; and further, that a failure of I. C. C. to grant a hearing in proceedings of this character is in violation of the Full Faith and Credit Clause of the Constitution of the United States.

The Complaint and the Motions to Dismiss pose the following questions:

(1) Is the discretionary action of the I. C. C. concluding not to institute an investigation subject to judicial review?

(2) Has the Court jurisdiction to require the Commission to institute an investigation into the proposed discontinuance of train service?

(3) Is Section 13a(1) of the Interstate Commerce Act as amended in 1958 unconstitutional as the P. U. C. has held it to be?

Prior to August 12, 1958, the Commission had no jurisdiction over the changes or curtailment of train service as distinguished from total abandonment of a line of railroad. Board of Public Utility Commissioners of New Jersey et al. v. United States et al., D.C.N.J., 158 F.Supp. 98, 104 (1957).

Section 13a(1) of the Interstate Commerce Act as amended merely permits railroads at their option to have the Interstate Commerce Commission rather than State commissions, pass upon discontinuance or change in the operation of any train or ferry not located wholly

---

1. On February 20, 1962, P.U.C. issued a rule requiring Pennsylvania to show cause why the service in question should not be continued and enjoining the railroad from discontinuing the service between Harrisburg and the Pennsylvania-Maryland boundary line until further order of the P.U.C. Pennsylvania answered the Rule to Show Cause basing its defense solely upon its interpretation of its rights and obligations and the jurisdiction of I.C.C. under Section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a (1). Hearings were held and on July 9, 1962, P.U.C. issued its Order directing Pennsylvania to continue its said service on the ground that its own authority to regulate intrastate commerce was plenary and it could not be deprived of said authority unless it was shown that it was an undue burden upon interstate commerce. The P.U.C. Order further held Section 13a(1) of the Interstate Commerce Act, as amended August 12, 1958, 72 Stat. 571, unconstitutional.

Pennsylvania did not appeal the above action of P.U.C., but on August 9, 1962 did file in this Court Civil Action No. 7810 (the instant action is No. 7680) to restrain and enjoin the individual members of the P.U.C. and the P.U.C. from enforcing its Order of July 9, 1962.

within the same State. The purpose of, and the reason for, this legislation is clearly set forth in the Committee Report which is included in the legislative history of the Act (see U.S.Congressional and Legislative News, 1958, Vol. 2, pp. 3457 and 3468):

"2. Sections 3 and 4 (amending sec. 1 and adding a new sec. 13a to the act) permit railroads, at their option, to have the Interstate Commerce Commission, rather than State commissions, pass upon discontinuance or change in the operation of any train or ferry, where such are operated on a line of railroad not located wholly within a single State." Vol. 2, p. 3457.

"Because of this delay [By State Commissions] in authorizing, or absolute refusal to authorize, discontinuance of little-used services, it is proposed to add a new section 13a to the act, whereby the railroads, at their option, may have the Interstate Commerce Commission, rather than State commissions, pass upon the discontinuance or change in the operation or service of any train or ferry. This option is limited, however, to the operation or service of a train or ferry on a line of railroad not located wholly within a single State. * * *" Vol. 2, p. 3468.

Section 13a(1) of the Act as amended makes the following provision for the discontinuance or change of trains or ferries operated across a State line:

(1) the carrier may file with the Commission (and mail to the Governors of States and post in the facilities to be affected) a notice of such proposed discontinuance or change at least 30 days in advance of its effective date;

(2) unless the Commission acts, the carrier may discontinue or change the service in accordance with the notice, "the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithstanding";

(3) during this 30-day notice period, "the Commission shall have authority * * *, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change";

(4) if the Commission institutes such an investigation, it may also, by order served upon the carrier at least 10 days prior to the effective date of the proposed discontinuance or change, require continuance of the service pending hearing and decision "but not for a longer period than four months"; at the end of four months, the carrier may put into effect the change or discontinuance even if the Commission's investigation is not concluded;

(5) after a hearing, if "the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order."

It will be noted that under the said section the Commission is limited to thirty days within which it is empowered to institute an investigation and thereby acquire jurisdiction over a carrier's proposal to discontinue a train or ferry service operated across a State line.

In view of the fact that the opinion of the Court in State of New Jersey et al. v. United States et al., D.C.N.J., 168 F. Supp. 324 (1958), aff. per curiam 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed.2d 625 (1959), covered practically all of the allegations in the instant Complaint, and that that opinion of the three-judge court received the unanimous approval of the Supreme Court, it would seem to be mere supererogation to further elaborate on them here. Suffice it to say that in the New Jersey case the Court held, inter alia:

(1) The action of the Commission concluding not to institute an investigation

into a proposed discontinuance of train service is committed to the exclusive discretion of the Commission and is not subject to judicial review.

(2) Plaintiffs have no constitutional nor statutory right to a hearing before the Commission decides not to enter upon an investigation of the proposed discontinuance of train service.

(3) Mandamus will not lie to require a public official or agency to perform discretionary acts.

In this action plaintiffs have not only sought to have this Court set aside the February 8, and March 23, 1962 actions of the Commission but also request us to order and accordingly to enter a judgment forbidding the discontinuance of the interstate service.

■■■ The obvious weakness here in plaintiffs' request is that the action taken by the Commission on February 8, and March 23, 1962, did not in either instance qualify as an order within the meaning of 28 U.S.C. § 1336 (I.C.C. orders), 28 U.S.C. § 2325 (injunction three-judge court), nor 49 U.S.C. § 17(9) (judicial relief from decisions). Neither action was final, both were completely gratuitous and in effect of no more technical significance than informal statements of Commission policy. Furthermore, Section 13a(1) is self-implementing. The Commission having failed to take affirmative investigatory action within the thirty day period, lost all authority to take such action and then at that point the carrier was vested with plenary power to effect the noticed discontinuance. Any order of the Commission after the expiration of the thirty day period would be completely gratuitous and of no consequence.

The opinion of the P. U. C. supporting its order concedes that the State of New Jersey case, supra, is controlling as to the issues raised therein, but distinguishes the present situation on the basis that while in the instant case there is both an interstate and intrastate aspect, in New Jersey there was only an interstate aspect. The P. U. C. concludes

that Section 13a(1) is therefore unconstitutional in failing to condition a discontinuance upon a hearing and finding that the intrastate operation is a burden on interstate commerce and is thereby violative of the due process clause of the Constitution of the United States.

In the Minnesota Rate Cases, 230 U.S. 352, 398–400, 33 S.Ct. 729, 739, 57 L.Ed. 1511 (1913), Justice Hughes speaking for the Court said, inter alia:

"(1.) The general principles governing the exercise of state authority when interstate commerce is affected are well established. The power of Congress to regulate commerce among the several States is supreme and plenary. It is 'complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution.' Gibbons v. Ogden, 9 Wheat. 1, 196 [6 L.Ed. 23]. The conviction of its necessity sprang from the disastrous experiences under the Confederation when the States vied in discriminatory measures against each other. In order to end these evils, the grant in the Constitution conferred upon Congress an authority at all times adequate to secure the freedom of interstate commercial intercourse from state control and to provide effective regulation of that intercourse as the national interest may demand. * * *

* * * * * *

" * * * It has repeatedly been declared by this court that as to those subjects which require a general system or uniformity of regulation the power of Congress is exclusive. In other matters, admitting of diversity of treatment according to the special requirements of local conditions, the States may act within their respective jurisdictions until Congress sees fit to act; and, when Congress does act, the exercise of its authority overrides all conflicting state legislation. * * * "

In Morgan v. Com. of Virginia, 328 U.S. 373, 380, 66 S.Ct. 1050, 1054, 90 L.Ed. 1317 (1946), the Court said, inter alia:

" * * * Because the Constitution puts the ultimate power to regulate commerce in Congress, rather than the states, the degree of state legislation's interference with that commerce may be weighed by federal courts to determine whether the burden makes the statute unconstitutional. The courts could not invalidate federal legislation for the same reason because Congress, within the limits of the Fifth Amendment, has authority to burden commerce if that seems to it a desirable means of accomplishing a permitted end."

There can be no question that Congress is empowered to legislate with respect to the operation or discontinuance of operation of trains engaged in interstate commerce. The only factual determination required here was the interstate character of the train in question. That was not disputed, consequently a hearing to determine jurisdiction became totally unnecessary. That the exclusive dominion of this matter is vested by Congress in the Commission is well demonstrated in State of Colorado v. United States et al., 271 U.S. 153, 165, 46 S.Ct. 452, 70 L.Ed. 878. There the Court affirmed an order of the Commission permitting the carrier to abandon a totally intrastate branch line. The order was made under the authority of Paragraphs 18–20 of the Transportation Act of 1920, supra, 49 U.S.C. § 1(18)–(20). The State of Colorado objected to the order of the Commission as an invasion of the State's right to control intrastate commerce. The Court while stating that the Transportation Act of 1920 did not purport to take from the State its powers to control intrastate commerce, nevertheless, the Act did impose on the Commission a duty to protect interstate commerce from undue burdens or discrimination. Excessive expenditures by the carrier may well affect interstate

transportation adversely, hence, (Pages 163, 165–166, 46 S.Ct. pages 454–455)

"The sole objective of paragraphs 18–20 is the regulation of interstate commerce. Control is exerted over intrastate commerce only because such control is a necessary incident of freeing interstate commerce from the unreasonable burdens, obstruction or unjust discrimination which are found to result from operating a branch at a large loss. Congress has power to authorize abandonment, because the State's power to regulate and promote intrastate commerce may not be exercised in such a way as to prejudice interstate commerce. * * *

* * * * * *

"The exercise of federal power in authorizing abandonment is not an invasion of a field reserved to the State. The obligation assumed by the corporation under its charter of providing intrastate service on every part of its line within the State is subordinate to the performance by it of its federal duty, also assumed, efficiently to render transportation services in interstate commerce. There is no contention here that the railroad by its charter agreed in terms to continue to operate this branch regardless of loss. Compare Railroad Commission [of Texas] v. Eastern Texas R. R. Co., 264 U.S. 79 [44 S.Ct. 247, 68 L.Ed. 569]. But even explicit charter provisions must yield to the paramount power of Congress to regulate interstate commerce. [State of] New York v. United States, 257 U.S. 591, 601 [42 S.Ct. 239, 66 L.Ed. 385]. Because the same instrumentality serves both, Congress has power to assume not only some control, but paramount control, insofar as interstate commerce is involved. It may determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. The power to make the de-

termination inheres in the United States as an incident of its power over interstate commerce. The making of this determination involves an exercise of judgment upon the facts of the particular case. The authority to find the facts and to exercise thereon the judgment whether abandonment is consistent with public convenience and necessity, Congress conferred upon the Commission."

It was specifically held in United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942) that states cannot "constitutionally thwart the regulatory power" of Congress when it is exercised with respect to intrastate commerce. Speaking for the Supreme Court, Chief Justice Stone there said (Page 119, 62 S.Ct. 526):

"\* \* \* The power of Congress over interstate commerce is plenary and complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196 [6 L.Ed. 23]. It follows that no form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to Congress. Hence the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power."

■■ In the light of the legislative history of the pertinent statute indicating that one of its purposes was to expedite the discontinuance of train service to alleviate the losses incurred in railroad passenger service, and that the intrastate portion of the service here in question is an integral part of a movement in interstate commerce, there can be no question but that the facts of this case bring it clearly within the scope of Section 13a(1).

Section 13a(1) is constitutional and deprives neither the State nor any individual of any right which the Constitution of the United States guarantees.

Motions of the United States of America, Interstate Commerce Commission, and The Pennsylvania Railroad Company to Dismiss the Complaint will be granted.