**STATE OF NEW HAMPSHIRE,**
Plaintiff,

v.

**BOSTON AND MAINE CORPORATION,**
United States of America, and Interstate Commerce Commission, Defendants.

Civ. A. No. 2570.

United States District Court
D. New Hampshire.

Dec. 28, 1965.

Eugene C. Struckhoff, Sp. Asst. to the Atty. Gen. of New Hampshire, George Pappagianis, Deputy Atty. Gen. of New Hampshire, Concord, N. H., for plaintiff.

John N. Nassikas and Wiggin, Nourie, Sundeen, Nassikas & Pingree, Manchester, N. H., Henri F. Rush, Jr., Donovan, Leisure, Newton & Irvine, New York City, for Boston & Maine Corp.

Nicholas de B. Katzenbach, Atty. Gen. of the U. S., William H. Orrick, Jr., and Donald F. Turner, Asst. Attys. Gen., Robert B. Hummel and John H. D. Wigger, Attys., Dept. of Justice, Washington, D. C., and Louis M. Janelle, U. S. Atty., Concord, N. H., for the United States.

Robert W. Ginnane, Gen. Counsel, Leonard S. Goodman, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Chester S. Ketcham, Deputy Atty. Gen. of Vermont, Montpelier, Vt., for the State of Vermont, amicus curiae.

Edward F. McLaughlin, Jr., Jamaica Plain, Mass., for Massachusetts Bay Transp. Authority.

Before WOODBURY, Senior Circuit Judge, and SWEENEY and CONNOR, District Judges.

SWEENEY, District Judge.

On June 24, 1964, the Boston and Maine Corporation (B & M), pursuant to Section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a(1), filed with the Interstate Commerce Commission, mailed to the respective Governors of New Hampshire, Maine, Vermont and Massachusetts, and posted in its stations notices that it intended, effective August 8, 1964, to discontinue all passenger train service (40 trains) between Boston and points in New Hampshire, Vermont and Maine.[1] As a result of various complaints, the Commission, on July 22, 1964, instituted an investigation of the proposed discontinuance and directed that train service be continued for a period not longer than four months beyond August 8.[2] After extended hearings, the Commission issued an order on December 31, 1964, and a report and amended order on January 12, 1965 requiring the B & M to continue seven trains in service for the period of one year. As to the others, it found that their operation is "not required by public convenience and necessity and the continued operation thereof will unduly burden interstate commerce," and it ordered that the investigation be discontinued.

A motion of the State of New Hampshire for reconsideration was denied by the Commission, and New Hampshire filed this Appeal from Orders of the Interstate Commerce Commission alleging jurisdiction under 28 U.S.C. § 1336. It claims that the Commission's order is without support of evidence in the record or is based on evidence that should not properly have been considered, that the order is not supported by the Commission's findings and that it is an abuse of discretion. The original defendants were the B & M and the United States; and leave was granted to the Commission to intervene as provided in 28 U.S.C. § 2323.

Shortly after this action was filed, the B & M moved to dismiss for lack of jurisdiction, which motion, we then denied without prejudice and on which we reserved decision until briefing on the merits.[3] Consequently, the first and, in view of our decision, sole issue before the court is the matter of jurisdiction.

The plaintiff invoked the court's jurisdiction under 28 U.S.C. § 1336 which permits district courts to entertain actions "to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order

1. Three so-called "service areas" are involved—Boston, Mass. to Concord and Meredith, N.H., and White River Junction and Wells River, Vermont (Concord Service Area); Boston, Mass. to Portsmouth, N.H. (Portsmouth Service Area); and Boston, Mass. to Dover, N.H. and Portland, Me. (Portland Service Area).

2. The B & M voluntarily extended this time to December 31, 1964.

3. The parties agreed, in the interest of time, to waive oral argument.

of the Interstate Commerce Commission." And the question is: Is the Commission's action with respect to the discontinued trains an appealable order within section 1336?

Section 13a(1) provides as follows:

"A carrier or carriers subject to this chapter, if their rights with respect to the discontinuance or change, in whole or in part, of the operation or service of any train or ferry operating from a point in one State to a point in any other State or in the District of Columbia, or from a point in the District of Columbia to a point in any State, are subject to any provision of the constitution or statutes of any State or any regulation or order of (or are the subject of any proceeding pending before) any court or an administrative or regulatory agency of any State, may, but shall not be required to, file with the Commission, and upon such filing shall mail to the Governor of each State in which such train or ferry is operated, and post in every station, depot or other facility served thereby, notice at least thirty days in advance of any such proposed discontinuance or change. The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithstanding. Upon the filing of such notice the Commission shall have authority during said thirty days' notice period, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change. Upon the institution of such investigation, the Commission, by orders served upon the carrier or carriers affected thereby at least ten days prior to the day on which such dis-

continuance or change would otherwise become effective, may require such train or ferry to be continued in operation or service, in whole or in part, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective. If, after hearing in such investigation, whether concluded before or after such discontinuance or change has become effective, the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order. The provisions of this paragraph shall not supersede the laws of any State or the orders or regulations of any administrative or regulatory body of any State applicable to such discontinuance or change unless notice as in this paragraph provided is filed with the Commission. On the expiration of an order by the Commission after such investigation requiring the continuance or restoration of operation or service, the jurisdiction of any State as to such discontinuance or change shall no longer be superseded unless the procedure provided by this paragraph shall again be invoked by the carrier or carriers."

■  The statute is clear and the cases hold that it is self-implementing in that it grants authorization to a carrier to discontinue service without requiring any action by the Commission to effectuate the carrier's announced intention. As a corollary, since the discontinuance comes not from Commission action but from the statute directly, there is, certainly in the case where the Commission decides not to investigate, no Commis-

sion order, within the meaning of section 1336, from which an appeal may be taken. State of New Jersey v. United States, 168 F.Supp. 324 (D.C.N.J.1959), aff'd per curiam, Bergen County v. United States, 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed. 2d 625 (1959); Sludden v. United States, 211 F.Supp. 150 (D.C.Md.1962).

Conceding the proposition above, the Commission and the plaintiff argue, however, that this case is significantly different from those cited because the Commission's decision permitting discontinuance of trains was made after an evidentiary hearing. We cannot agree. Under the statute, the Commission has authority only to institute an investigation and to require *continuance* of service upon a finding of public convenience and necessity. But the statute, by its terms, whether before, during or after an investigation and hearing, requires no action or order by the Commission to render effective the *discontinuance* of service.

To hold that discontinuance of operations without investigation is not reviewable by a court, whereas a discontinuance after investigation is appealable, is, moreover, poor policy, as the court in State of Minnesota v. United States, 238 F.Supp. 107 (D.C.Minn.1965) recently pointed out. It would mean substantially less freedom for the Commission if it conducts an investigation than if it had refused to consider the problem and "might even encourage the Commission not to investigate doubtful cases." 238 F.Supp. 107, at 113.

The legislative history indicates that this statute was passed to help particularly the eastern railroads of the United States, many of which were in serious financial straits largely because of high and continuing losses from passenger service. Discontinuance of trains was subject to state jurisdiction and because state commissions had, in most cases, delayed in granting or refused to grant relief to the railroads, and had thereby prevented railroads from making changes in their operations in line with changes in patronage, the Congress passed section 13a(1) to permit railroads at their option to have the Interstate Commerce Commission, rather than state commissions, pass upon discontinuance of interstate operations. 1958 U.S. Code Cong. and Admin. News, pp. 3456–7, 3467–9. In addition, the statutory scheme emphasizes that Congress intended the Interstate Commerce Commission also to act with unusual speed in 13a(1) proceedings. In a very real sense, the purpose and plan of the Act would be frustrated were the states to have a right of appeal from whatever action the Commission takes or fails to take.

The Commission argues for jurisdiction in this case by analogy of section 13a(1) to the rate suspension and investigation provisions of section 15(7) of the Act, 49 U.S.C. § 15(7). Whenever a carrier files a new rate, under section 15(7), the Commission is given authority to "enter upon a hearing concerning the lawfulness of such rate," and pending such hearing, it may suspend the use of the proposed rate. It is true, as the Commission contends, that its decision as to whether to suspend a proposed rate is a matter entirely within its discretion and not subject to judicial review, Luckenbach Steamship Co. v. United States, 179 F.Supp. 605 (D.C.Del.1959), modified, 364 U.S. 280, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960), while its decision, after hearing, as to whether the rate is lawful, is clearly reviewable. But section 15(7) differs from the statute in issue in at least two important respects. First, as the court in New Jersey points out, the Commission is given authority in section 15(7) "to enter upon a hearing," whereas the parallel language in section 13a(1) is "to enter upon an investigation." Second, section 15(7) is not self-implementing. The Commission must determine the lawfulness of the proposed rate before it becomes finally effective, North Carolina Natural Gas Corp. v. United States, 200 F.Supp. 745 (D.C.Del. 1961), whereas, no Commission action is necessary to effect discontinuance of service under section 13a(1). The requirement of a hearing in 15(7) implies judicial review, while the discretionary power

to investigate, does not. In the former case, Sections 7 and 8 of the Administrative Procedure Act, 5 U.S.C. §§ 1006, 1007, which provide for a record, a hearing examiner's report, right of cross-examination, etc., are applicable, while in the latter, probably only the provisions of section 4, 5 U.S.C. § 1003, would apply, which require no more than that interested persons be given an opportunity to be heard and that the agency consider the relevant data in arriving at its decision. Indeed, if there is any analogy at all to section 15(7), it would be that the Commission's power to suspend the discontinuance is unreviewable, cf. Arrow Transportation v. Southern R. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), not that the decision not to investigate is unreviewable but the decision to terminate the investigation is reviewable.

The Commission has directed our attention to two unreported per curiam decisions affirming commission orders terminating investigations under section 13a(1), Rhodes et al. v. United States, Civil Action No. 63–472, U.S.D.C., W.D. Pa., October 15, 1963, California v. United States, Civil Action No. 38915, U.S.D.C., N.D.Cal., April 6, 1961. However, as the question of reviewability was apparently not raised, and certainly not discussed, in either case, they are of little value.

■ New Hampshire argues that the statute should be interpreted to deny judicial review only if Congress clearly and plainly expressed an intention to that effect and it urges that section 13a (1) expresses no such Congressional purpose. The Transportation Act of 1958, which amended the Interstate Commerce Act, in part, by adding section 13a was the result of several years of study and investigation by Congress and is a well-considered piece of legislation. We cannot, therefore, ignore the difference in language between subsections (1) and (2). Congress carefully provided that intrastate service may be discontinued only with Commission authority "after full hearing and upon findings," while interstate operations, as spelled out earlier, may be discontinued at the carrier's option with merely the authority to investigate being granted to the Commission. While Congress did not expressly deny judicial review of 13a(1) proceedings, we find, apart from the terms of section 13a(1), the difference between subsections (1) and (2) highly persuasive that Congress did, indeed, intend that result.

■ The most appealing argument in support of jurisdiction on these facts is one based simply on fairness and equity. Since the railroad would have a right to appeal the Commission's order that seven trains are required by the public convenience and necessity and must, therefore, be continued in service, the public should have a right to judicial review with respect to the discontinued trains as well. But the short answer to this argument is that Congress does not have to be fair. Even the plaintiff, here, recognizes that "Congress is entitled to determine whether review of administrative action is to be permitted, under what circumstances and to what extent. United States v. Interstate Commerce Commission, 337 U.S. 426, 446–7 [69 S.Ct. 1410, 93 L.Ed. 1451] (1949) dissenting opinion." Memorandum of Plaintiff's Argument in Support of Jurisdiction, pp. 11–12.

For all of the foregoing reasons, we find that this court has no jurisdiction of the complaint. Accordingly, the Railroad's motion to dismiss is now allowed and the complaint is dismissed.