**CITY OF CHICAGO, the Metropolitan Government of Nashville and Davidson County, Tennessee, Village of Milford, City of Watseka, City of Hoopeston, City of Danville, City of Terre Haute, City of Vincennes and Maurice F. Radrizzi, Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission and Chicago and Eastern Illinois Railroad Company, Defendants.**

**No. 68 C 956.**

United States District Court
N. D. Illinois, E. D.
Jan. 8, 1969.

**1104**

Raymond F. Simon, Corp. Counsel, Bernard Rane and Matthias Mattern, Asst. Corporation Counsels, City of Chicago, Chicago, Ill., Gordon P. Mac-Dougall, Washington, D. C., Neill S. Brown and Robert E. Kendrick, Nashville, Tenn., Anthony Haswell, Chicago, Ill., Robert P. Doolittle, Jr., Vincennes, Ind., Harold N. Hill, Jr., Atlanta, Ga., Eugene W. Ward, Nashville, Tenn., William F. Black, Montgomery, Ala., Robert S. Matthews, Evansville, Ind., Wendell W. Wright and Marion E. Wright, Danville, Ill., William E. Nelson, Hoopeston, Ill., Keith E. Roberts, Chicago, Ill., George B. Tofaute, Terre Haute, Ind., David O. Benson, Atlanta, Ga., for certain plaintiffs.

Edwin M. Zimmerman, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Thomas A. Foran, U. S. Atty., and M. P. Siavelis, Asst. U. S. Atty., Chicago, Ill., for the United States.

Robert W. Ginnane, Gen. Counsel, and Barry Roberts, Atty., Washington, D. C., for the I.C.C.

Albert E. Jenner, Thomas P. Sullivan, Keith F. Bode and David C. Roston of Raymond, Mayer, Jenner & Block, Chicago, Ill., Patrick C. Mullen and James H. Durkin, Chicago Heights, Ill., for Chicago and Eastern Illinois Railroad Co.

## MEMORANDUM AND ORDER

Before KNOCH, Senior Circuit Judge, and ROBSON and PERRY, District Judges.

ROBSON, District Judge:

This is a suit to review certain findings and conclusions of the Interstate Commerce Commission. The defendant railroad has moved to dismiss. This court is of the opinion that the motion should be granted.

On August 31, 1967, the Chicago & Eastern Illinois Railroad Company ("Eastern") gave notice under 49 U.S.C. § 13a(1) that, effective October 1, 1967, its trains numbered 93 and 54 between Chicago, Illinois, and Evansville, Indiana, would be discontinued. On September 18, 1967, the Interstate Commerce Commission ("Commission") entered an order requiring Eastern to continue operating trains 93 and 54 pending an investigation by the Commission. After hearings and briefs, Division 3 of the Commission on January 25, 1968 (served January 31, 1968), decided to terminate its investigation, and filed a report outlining its reasons. A petition for reconsideration was denied on May 8, 1968. This suit was filed shortly thereafter. A three-judge court was convened and a joint hearing (with Tennessee Public Service Comm. v. United States, D.C., 294 F.Supp. 1106) was held on November 4, 1968.

The statute under which Eastern posted its notices to discontinue is a unique statute passed in 1958 to deal with serious financial problems faced by this na-

tion's railroads. It allows the railroads to discontinue certain interstate trains without seeking prior approval of the Interstate Commerce Commission or any state commissions. If the Commission does nothing to stop the railroad, the discontinuance follows automatically by statute, with no need whatsoever for a Commission order to authorize the discontinuance. 49 U.S.C. § 13a(1). The Commission has a short period (30 days) in which to decide whether an investigation is necessary, and, after an investigation (if, of course, the Commission determines it is necessary), the Commission may order the continuance of part or all of the trains involved. This period of continuance is restricted to only one year, after which time the railroad may post further notices and go through the entire process again.

It has been conceded by both sides that when the Commission decides not to enter into an investigation, there is no judicial review, even though there may be cities and states which might be "aggrieved" by the discontinuances. State of New Jersey v. United States, 168 F. Supp. 324 (D.N.J.1958), affirmed per curiam 359 U.S. 27, 79 S.Ct. 603, 3 L.Ed. 2d 625 (1959); Sludden v. United States, 211 F.Supp. 150 (M.D.Pa.1962). In the *New Jersey* case, supra, at 329, the court said that the Commission's order foreclosing an investigation was

> "nothing other than an announcement that the Commission intended to take no action with respect to the railroad's notice of intention to discontinue the ferries. Section 13a(1) clearly leaves to the absolute discretion of the Commission the determination of whether or not it * * * shall make any investigation of the matter or avail itself of its temporary veto power by way of suspension within the limitations of the Act."

The instant case, contend the plaintiffs, has a crucially different element: The Commission here entered into an investigation, held hearings, made findings, and issued an order terminating the investigation. Even though the plaintiffs concede, as they must, that the statute [§ 13a(1)] was the source for the authority to discontinue, and not any order or action of the Commission, they argue that judicial review exists as to the order terminating the investigation under 28 U.S.C. § 1336, which provides for review of Commission "orders." The question whether such a Commission order does fall under § 1336 has been discussed at length in several prior decisions.

In State of Minnesota v. United States, 238 F.Supp. 107, 112 (D.Minn.1965), the court determined that the report and findings filed after the investigation was terminated were both "gratuitous" acts. The reasoning behind the Commission's decision to terminate, the court continued, even though it showed that the Commission "decided" that the discontinuances were proper, is part of the power to terminate and within the "sole discretion" of the Commission, and not subject to judicial review. The court reasoned that the primary purpose of an investigation and the hearings was to give the Commission enough information so that it would be able to reach a sound judgment as to whether it should interfere with the proposed cutbacks in rail service. Two situations were posed: (1) Where the Commission knows enough about the situation, as in the *New Jersey* case, supra, at 328, it will hold no investigation, and the discontinuance will occur automatically; and (2) Where the Commission does not know enough about the problem, it will investigate, hold hearings, determine (as in this case) that the discontinuance does not warrant its interference, terminate the investigation, and the discontinuance will *still* occur automatically. There is, said the court, no logical difference between the two situations. Where the Commission decided to take action, the order requiring continuance for one year would be reviewable; however, the "mere decision of the Commission to take no action is not." *Minnesota,* supra, at 112. To provide review of decisions to terminate investigations, concluded the court,

would not only be contrary to the clear meaning of § 13a(1), but would be poor policy, "since it might even encourage the Commission not to investigate doubtful cases." Id., at 113.

The court in State of New Hampshire v. Boston and Maine Corp., 251 F.Supp. 421 (D.N.H.1965), recognized that there might be some unfairness here. However, it said that Congress, in meeting what was almost a crisis situation, could provide review for one side (the railroads), especially where the other side would be seeking review of Commission "non-action," if there were cogent policy considerations to call for such a result. Id., at 425. It is entirely within the spirit of the legislation to have given the railroads rapid relief without lengthy review. In fact, it was the delay inherent in the proceedings before the state commissions that called forth the passage of Section 13a(1). See the discussion of the legislative history in, e. g., State of Vermont v. Boston and Maine Corp., 269 F.Supp. 80, 84 (D.Vt.1967).

These considerations sufficiently meet, in this court's opinion, the contention by two later courts that Congress did not intend to deny judicial review in the present circumstances. *Vermont,* supra; City of Williamsport v. United States, 273 F.Supp. 899, 902–903 (M.D.Pa. 1967).[1] Further supporting this conclusion is the fact that in Section 13a (2), which deals with wholly intrastate operations, Commission approval is expressly necessary before a railroad can discontinue any service. 49 U.S.C. § 13a(2). The provisions, therefore, in 28 U.S.C. § 1336, that only Commission "orders" are reviewable, call for judicial review in cases falling under Section 13a(2). But where, as in Section 13a(1), the statute is self-implementing, no comparable "order" of the Commission is involved. Taking the statute in its entirety, it seems apparent that Congress intended to deny judicial review in the instant case.[2]

This court, in view of its opinion on the jurisdictional issues, does not pass on the other questions presented.

It is therefore ordered that the defendant Chicago & Eastern Illinois' motion to dismiss be, and it is hereby granted and the cause is hereby dismissed.

---

1. The same underlying facts were the substance of the case of City of Williamsport v. United States, 282 F.Supp. 46 (M.D.Pa.1968), affirmed per curiam 392 U.S. 642, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968). This case decided that the Commission has the power to order a partial continuance of operations, but did not discuss the jurisdictional question at all. There was also no discussion of the jurisdictional issue in People of the State of California v. United States, 258 F.Supp. 950 (N.D.Cal.1966).

2. The Commission takes the position that review is proper under the present statute but has requested an amendment to the Act to remove any doubt. *Vermont,* supra, at 83–84, n. 2.