**CHICAGO & EASTERN ILLINOIS RAIL-ROAD COMPANY, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**and**

**People of the State of Illinois, Illinois Commerce Commission, City of Chicago, City of Watseka, Village of Milford, City of Hoopeston, City of Danville, Danville Chamber of Commerce and United Transportation Union, Intervenor-Defendants.**

**No. 69 C 136.**

United States District Court
N. D. Illinois, E. D.

Dec. 5, 1969.

Jenner & Block, Chicago, Ill., for plaintiff.

Barry Roberts, Washington, D. C., for I. C. C.

John H. D. Wigger, Dept. of Justice, Washington, D. C., and Thomas Foran, U. S. Atty., Chicago, Ill., for the United States.

William E. Nelson, Hoopeston, Ill., for City of Hoopeston.

Keith E. Roberts, Chicago, Ill., for City of Watseka and Village of Milford and United Transportation Union.

Milo J. Fleming, Watseka, Ill., for City of Watseka and Village of Milford.

Gordon P. MacDougall, Washington, D. C., for United Transp. Union.

Raymond F. Simon, Corp. Counsel, for City of Chicago.

Wendell W. Wright, Danville, Ill., for City of Danville.

William J. Scott, Atty. Gen., State of Illinois, for State of Illinois.

Thomas C. Stifler, III, Danville, Ill., for Danville Chamber of Commerce.

Before CUMMINGS, Circuit Judge, and MAROVITZ and AUSTIN, District Judges.

AUSTIN, District Judge:

Plaintiff seeks to have this Court set aside, annul, vacate and declare void an order of the Interstate Commerce Commission which denied its petition to discontinue operation of the Danville Flyer which provides passenger train service between Chicago and Danville, Illinois. Fin.Doc. 24726, 333 I.C.C. 626. The trains involved are Nos. 3 and 4 which have operated daily between the two cities, a distance of 123.2 miles, since August 3, 1965. No express or mail is carried. Each train is powered by a single unit diesel locomotive, has two coaches, and one lounge buffet car; all stainless steel equipment. The character of this equipment and the service are excellent; all cars are air-conditioned, cleaned at the end of each run, and all kept in good repair. These are the last trains providing passenger service in the area between the two cities.[1]

■ Plaintiff initially filed its petition with the Illinois Commerce Commission on September 17, 1966. On August 31, 1967 when the State Commission failed to act thereon, it filed its petition with the Interstate Commerce Commission pursuant to § 13a(2), 49 U.S.C.A.[2] On September 20, 1967, the State Commission issued its order denying plaintiff's petition. Ill.C.C.Doc. 52693. On January 31, 1968 a hearing examiner for the Interstate Commerce Commission issued a recommended report finding that present and future public convenience and necessity permitted discontinuance and that continued operation would constitute an unjust and undue burden upon the carrier's interstate operations and upon interstate commerce. Division 3 of the Commission disagreed with the examiner's conclusions and on August 14, 1968 issued an order requiring the continued operation of these trains. One Commissioner dissented. A petition for rehearing was filed by plaintiff seeking to present passenger use figures for these trains after the discontinuance of the interstate train, The Georgian in the *Companion* case, because of the Commission's statement in its discussion that "increased patronage should result from

1. Trains 3 and 4 evolved from earlier proceedings before the Illinois Commerce Commission. In 1964 there were three pairs of interstate trains between Chicago and Evansville, Indiana [Nos. 1 and 92 and Nos. 95 and 94]. Discontinuance was sought by plaintiff of the Chicago-Danville segment. By agreement with the State Commission, the carrier, and communities affected, one pair [Nos. 95 and 94] were discontinued on condition that two intrastate trains operate daily between Chicago and Danville, and a rate increase of 30% was granted. Ill.C.C. Doc. 50578, 7/15/65. Nos. 1 and 92 were then renumbered 3 and 4 and the I.C.C. authorized discontinuance of the Danville-Evansville, Ind. operation. 328 I.C.C. 427 (1968).

On Feb. 1, 1968, the I.C.C. approved discontinuance of a remaining interstate pair of trains [Nos. 93 and 54] operating between Chicago and Evansvlle, Ind., known as The Georgian, in the *Companion* case to the one before us, both being heard on a common record. 331 I.C.C. 447, aff'd 294 F.Supp. 1103 (D.C.Ill. 1969) app. pending to the Supreme Court of the United States because of decisional differences on § 13a(1) jurisdiction.

2. The section prescribes the procedure where discontinuance is sought after a petition is filed with the State Commission and provides in pertinent part thereof

" * * * where the State authority having jurisdiction thereof shall * * * not have acted finally on such an application or petition within one hundred and twenty days from the presentation thereof, such carrier * * * may petition the Commission for authority to effect such discontinuance * * *. The Commission may grant such authority only after full hearing and upon findings by it that (a) the present or future public convenience and necessity permit of such discontinuance * * * and (b) the continued operation or service of such train * * * without discontinuance * * * will constitute an unjust and undue burden upon the interstate operations of such carrier * * * or upon interstate commerce. * * * and the Commission is authorized to avail itself of the cooperation, services, records and facilities of the authorities in such State in the performance of its functions under this paragraph."

the discontinuance of" The Georgian, 333 I.C.C. at page 632. Said petition was denied. It is urged that such a denial constituted an abuse of discretion. While we do not agree that such denial falls within the exception to the general rule governing Commission discretion on petitions for rehearing because such proferred evidence does not bear directly on the merits here, it would have been fairer to have reopened the proceedings to permit such a filing especially in the light of the Commission's voluntary projection of that proposition.

Two events occurred after the inception of the § 13a(2) petition which must receive our preliminary consideration. These are the continued proceedings and record before the Illinois Commerce Commission after § 13a(2) jurisdiction of the Interstate Commerce Commission was invoked; and the sale of plaintiff's properties on June 9, 1969 to the Louisville & Nashville with Commission approval.

■ No dispute exists regarding the exclusive jurisdiction of the Interstate Commerce Commission which makes the order of the State agency "completely abortive". Penn. RR. Co. v. Sharfsin, 240 F.Supp. 233, 236 (D.C.Pa., 1965), vac. and rem. Penn. Public Utility Comm. v. Penn. R. Co., 382 U.S. 281, 86 S.Ct. 423, 15 L.Ed.2d 324; aff'd 369 F.2d 276 (C.A. 3, 1966), cert. den. 386 U.S. 982, 87 S.Ct. 1288, 18 L.Ed.2d 231 (1967). However the community and labor intervenor-defendants request, in addition to other portions of the Commission record which plaintiff has supplied, that plaintiff certify to this court the record before the State authorities filed by plaintiff as a part of its petition to the Commission because these defendants relied thereon in their brief filed to this Court. Ans. Memo. filed 8/27/69, pp. 8–9. Although willing to do so should this Court direct, plaintiff maintains that such record was filed for the sole purpose of satisfying the Commission of its jurisdiction under § 13a(2) and that neither the examiner nor the Commission relied on that record for substantive evidence

in disposing of the merits of plaintiff's petition. We have re-examined the page references to intervenor-defendant's brief and find them devoid of specific references to evidence in the state record. The authorities cited support the proposition that when that record evidence is considered and relied on by the Commission such then becomes a part of the Commission record. We deem unnecessary for the purposes of our review to include matter which was not a part of the Commission's consideration of the merits and which serves no useful purpose.

■ Because of the sale of the C&EI properties to the L&N, the instant action is now maintained by the C & EI for the use and benefit of the L&N. Rule 25 (c), F.R.C.P., 28 U.S.C.A. All defendants seek a dismissal of this suit because of mootness in that these trains are no longer operated by the C&EI and neither the State Commission nor the Interstate Commerce Commission have been presented with any L&N proposal regarding the instant operation and for that reason the L&N should be compelled to follow the prescribed statutory procedure through the State Commission. L&N asserts its operation of these trains is identical with the former operation and the losses suffered remain unchanged as does the issue of public patronage and adequacy of alternative means of transportation. However, defendants contend that such statement is without basis since any L&N operation is an unknown factor there being no evidence presented with regard thereto and that such evidence more properly should be presented to the State Commission where it may be properly evaluated.

The propriety of bringing this suit pursuant to the procedure sanctioned by Rule 25(c) is clear. It appears the underlying basis for defendants' motion is the absence of L&N's "critically important" financial data bearing on its ability to absorb an unprofitable operation without incurring an unjust or undue burden to its interstate operations and to interstate commerce. Intervenor-

defendants emphasize that the L&N is "one of America's wealthy railroads".[3] While there is a necessary correlation in a carrier's financial condition as it bears upon interstate operations and that of public need, plaintiff urges the financial condition of the L&N in this instance should be given little weight. Conversely, defendants stress that such data showing the marginal financial ability of C & EI to continue operation was the supporting basis for the contrary conclusions of the hearing examiner and dissenting commissioner. Each cite Southern R. Co. v. North Carolina, 376 U.S. 93, 84 S.Ct. 564, 11 L.Ed.2d 541 (1964).

The same point was urged to the Commission in the *Companion* case where defendants insisted that the financial condition of the Missouri Pacific, which controlled the C&EI, was relevant because it was the real party in interest.[4] The argument was rejected. 331 I.C.C. 447, 449; see also 333 I.C.C. at page 628. It seems pertinent to note here, as plaintiff asserts, that when the Commission approved the sale, it was keenly aware of the financial position and ability of L&N to maintain the operation. It appears to us anomalous to require such evidence as a decisional element here when the same type of evidence by a financially marginal carrier was held insufficient to sustain the essential showing of undue burden. Moreover, in this case, little weight is to be given to the carrier's prosperity. Southern R. Co. v. North Carolina, 376 U.S. 93, 105, 84 S.Ct. 564, 11 L.Ed.2d 541 (1964). To relegate the L&N to the State Commission for such purpose here would be a needless circumlocution of time and effort. The motion to dismiss is overruled.

■■ We are cognizant of the restrictive standard for review. The test to be applied in determining whether agency action was arbitrary, capricious, unreasonable, or an abuse of discretion is whether there is substantial evidence in the record as a whole to support its findings and conclusions. It does not rest upon the quantum or the weight of the evidence. In the performance of this function, we cannot summarily approve the Commission's evaluation of that record. The substantial evidence standard is an objective test as to whether the agency exercised such considered judgment as a reasonable mind might accept as adequate to support a conclusion; that is, it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn from it is one of fact for the jury. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ Except as modified and supplemented by it, the Commission adopted the examiner's findings, but not his conclusions therefrom. Three modifications were made which dealt with the financial figures submitted by petitioner. The Commission determined that there was an overstatement of the potential savings to be derived from discontinuance because the figures included salaries of mail handlers when no mail was carried; wages of the train crew were not entirely savable on discontinuance; and the depreciation figures failed to take into account how much equipment used on these trains would be retired or used in other operations. It concluded, therefore, that it could make no determination as to "exact amount of savings" which would be realized on discontinuance. But it did recognize that "it is evident that out-of-pocket loss which could be avoided through discontinuance would be substantial". 333 I.C.C. page 630. The Commission also indicated that while it had not been shown that patronage would be adversely affected, the

---

3. Brf. Community and labor defendants, filed 8/27/69, p. 7; Brf.Ill.CC. pp. 12–13.

4. C&EI was controlled by the Missouri Pacific since 1967, which control was approved on the condition that C&EI negotiate and sell its Evansville Line to the L&N. Illinois Central R. Co. v. U. S., 263 F.Supp. 421 (D.C.Ill.1966) aff'd 385 U.S. 457, 87 S.Ct. 612, 17 L.Ed.2d 509 (1967).

**650**

carrier might consider the feasibility of eliminating the lounge buffet car; and additionally inferred that discontinuance of The Georgian should result in increased patronage on the Danville Flyer. Significantly it emphasized that "this service can only be maintained if the public supports these trains with its patronage."

The Commission was also concerned with the fact that trains 3 and 4 were the last trains providing passenger service in the area. The last train factor must be balanced to the public use and as with other factors considered by the Commission is not alone determinative. Southern R. Co. v. North Carolina, supra; Companion case, 331 I.C.C. 447 (1968); State of Minnesota v. United States, 238 F.Supp. 107 (D.C.Minn.1965); State of Vermont v. Boston & Maine Corp., 269 F.Supp. 80 (D.C.Vt.1967); Missouri Pacific R. Co., Discontinuance of Service, 312 I.C.C. 31, 40 (1960); Chicago, R. I. & P. R. Co., Discontinuance of Trains, 317 I.C.C. 611–12 (1962); Louisville & Nashville R. Co., Discontinuance of Trains, 333 I.C.C. 720, 729–30 (1968).

These modifications and supplemental considerations do not detract from the findings of the examiner which the Commission adopted and we need not repeat the record evidence reflected in these findings which received the considered judgment of the examiner and the Commission. Our duty is to ascertain whether that evidence in the record as a whole reasonably supports the conclusion of the Commission. We agree it does not. We conclude that the record as a whole clearly precludes the Commission decision from being justified as reasonably drawn from that evidence and the findings made thereon.

The prayer of the plaintiff to set aside, vacate, annul and hold void the order of the Commission and to enjoin its enforcement must be granted. This cause is remanded to the Commission for further proceedings consistent with the Court's opinion.