CITY OF WILLIAMSPORT et al.,
Plaintiffs,

v.

UNITED STATES of America, Interstate Commerce Commission and the Pennsylvania Railroad Company, Defendants.

Civ. No. 9996.

United States District Court
M. D. Pennsylvania.

July 20, 1967.

Henry C. Perciballi, City Sol., Williamsport, Pa., Anthony Manguso, Corp. Counsel, Abraham I. Okun, Asst. Corp. Counsel, George Hamilton Forman, Buffalo, N. Y., Samuel C. Ranck, City Sol., Milton, Pa., Harvey Gelb, Robert P. Casey, Scranton, Pa., Thomas Park Shearer, Pittsburgh, Pa., Gordon P. MacDougall, Washington, D. C., for plaintiff.

James H. Stewart, Jr., of Nauman, Smith, Shissler & Hall, Harrisburg, Pa., Donald A. Brinkworth, Pittsburgh, Pa., for defendant Pennsylvania R. Co.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant United States.

Before FREEDMAN, Circuit Judge, and SHERIDAN and NEALON, District Judges.

NEALON, District Judge.

Defendant, Pennsylvania Railroad Company (Pennsylvania), has moved this three-Judge Court to dissolve a temporary restraining order issued May 15, 1967, by District Judge Nealon or, in the alternative, to vacate the order pending the posting of security.

Pennsylvania operates passenger trains Numbers 570 (Southbound) and 571 (Northbound) between Buffalo, New York, and Baltimore, Maryland. On December 7, 1966, in accordance with the provisions of Section 13a(1) of the Interstate Commerce Act, 49 U.S.C.A. § 13a,[1] Pennsylvania posted notices of its intention to discontinue the operation of these trains effective January 15, 1967. Petitions of protest were filed by numerous parties and by order entered January 3, 1967, the Interstate Commerce Commission instituted an investigation of the proposed discontinuance and, as provided for in § 13a, required the trains to operate for a period not to exceed four months pending hearing and decision in such investigation. Hearings were held and by order served May 12, 1967, Division 3 of the ICC, in a two-to-one decision, directed Pennsylvania to continue the operation of both trains between Baltimore, Maryland, and Harrisburg, Pennsylvania, for a period of one year and permitted Pennsylvania to discontinue operation of these trains between Harrisburg and Buffalo, New York. This report and order of Division 3 was not administratively final within the meaning of Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9),[2] as petitions for reconsideration of the Division 3 order may be filed within thirty days by the terms of Section 1.01(a) (2) of the Commission's General Rules of Practice. Pennsylvania immediately posted notices that trains

---

1. Section 13a(1) provides, in pertinent part:

"The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithstanding. Upon the filing of such notice the Commission shall have authority during said thirty days' notice period, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change. Upon the institution of such investigation, the Commission, by orders served upon the carrier or carriers affected thereby at least ten days prior to the day on which such discontinuance or change would otherwise become effective, may require such train or ferry to be continued in operation or service, in whole or in part, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective. If, after hearing in such investigation, whether concluded before or after such discontinuance or change has become effective, the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order."

2. Section 17(9) provides:

"(9) When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such decision, order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise."

Nos. 570 and 571 would make their last runs between Buffalo and Harrisburg on Monday, May 15, 1967. On that day, plaintiffs who were protestants in the Commission proceedings, filed a complaint in the United States Court for the Middle District of Pennsylvania challenging the findings of Division 3 and requesting the appointment of a three-Judge Court as required by 28 U.S.C.A. §§ 2284, 2321 and 2325. Pending the appointment of the three-Judge Court and action on their application for an interlocutory injunction, plaintiffs requested the District Judge to whom the application was made to issue a temporary restraining order in accordance with Section 2284(3) of Title 28 U.S.C.[3] Pennsylvania's decision to discontinue the Buffalo-Harrisburg runs on May 15 could not otherwise be forestalled because the four-month delay ordered by the Commission under Section 13a(1) would expire on that date. According to plaintiffs, they would suffer irreparable damage if the discontinuance of trains took effect while the petitions for reconsideration were pending with the Commission as (1) it would very likely prejudice the final action of the agency, (2) freight shipments normally handled on these trains would be diverted to other carriers and would never be recovered, (3) the jobs of railroad employees would be irretrievably lost, and (4) they have a high probability of success on the ultimate merits of the case. Therefore, plaintiffs asserted, unless a temporary restraining order was granted, they would be denied an effective exhaustion of the ICC's administrative procedure and effective review by a three-Judge Court.

After finding that immediate and irreparable injury would result if the trains were discontinued on May 15, a temporary restraining order, without any requirement for the posting of security, was issued by District Judge Nealon. The order provided that if plaintiffs petitioned the ICC by May 25, 1967, then the restraining order would remain in effect until such time as a final order was issued by the ICC, or until further order of the Court.

The present three-Judge Court, consisting of Circuit Judge Freedman, Chief Judge Sheridan and Judge Nealon, was constituted May 19, 1967, and this motion followed. The reasons advanced in support of defendant's present motion are:

(1) the Court is without authority to review passenger train discontinuances which have been effected in accordance with Section 13a(1) of the Interstate Commerce Act, 49 U.S.C.A. § 13a(1);

(2) even assuming three-Judge Court jurisdiction to review the Interstate Commerce Commission order of May 15, 1967, after it becomes final, plaintiffs are not entitled to any review or relief before the order becomes final, and

(3) the injunctive relief was granted by the District Judge under his general equitable powers and not pursuant to 28 U.S.C.A. § 2284 and, therefore, the plaintiffs were required to post security under F.R.Civ.P. 65(c).[4]

Concerning the first argument advanced by movant, the remaining defendants, viz., the United States and the ICC, take a contrary position and filed a joint memorandum at the hearing in which they asserted that " * * * the courts

---

3. Section 2284(3) provides:
    "(3) In any such case in which an application for an interlocutory injunction is made, the district judge to whom the application is made may, at any time, grant a temporary restraining order to prevent irreparable damage. The order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the full court. It shall contain a specific finding, based upon evidence submitted to such judge and identified by

reference thereto, that specified irreparable damage will result if the order is not granted."

4. Rule 65(c) provides, in pertinent part:
    "(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

have jurisdiction to review any final Report and Order of the Commission when issued in this case." The question of judicial review of Section 13a(1) investigations where the Commission did enter into a full investigation [5] has been considered in State of Vermont v. Boston & Maine Corp., D.C.Vt., 269 F.Supp. 80, decided May 11, 1967; State of New Hampshire v. Boston & Maine Corp., 251 F. Supp. 421 (D.C.N.H.1965), and State of Minnesota v. United States, 238 F.Supp. 107 (D.C.Minn.1965). In the Minnesota case, the Commission undertook an investigation of proposed train discontinuances and decided that the value of the services provided was outweighed by the burden on the carrier of maintaining it. When the State of Minnesota sought review, the Court concluded that the decision of the Commission to terminate the investigation was not an appealable order within the meaning of 28 U.S.C. § 1336. In New Hampshire, the Commission instituted an investigation of proposed train discontinuances and held extended hearings, the result of which was an order requiring seven trains to continue in service for one year, while, as to the others, it found that the continued operation thereof was "not required by public convenience and necessity and * * * will unduly burden interstate commerce." New Hampshire appealed and the Court held that § 13a(1) was self-implementing in that it allowed a carrier to discontinue service without requiring any action by the Commission to effectuate the carrier's announced intention and, since the discontinuance comes not from Commission action, but from the statute directly, there was no Commission order, within the meaning of Section 1336, from which an appeal may be taken. The Court recognized further

that the railroad would have a right to appeal the Commission's order that seven trains were to continue in service for one year, but held that Congress did not provide the public with the right to judicial review with respect to the discontinued trains.

The Vermont case was similar to the one before us in that the Court was asked to issue a temporary restraining order before the Commission handed down its final order. After examining the Minnesota and New Hampshire holdings, the Court adopted the contrary view on jurisdictional review of discontinuances and stated:

"* * * we fail to find convincing evidence that the Congress intended the unusual and concededly unfair result of granting judicial review of the Commission's determination solely to the roads, and not to opposing parties. * * * If an order is wrongfully granted, the road can obtain review and reversal. If an order is wrongfully refused, ordinary principles of review of administrative determinations, as well as elemental fairness call for review at the instance of opposing parties. Congress having set standards for the Commission in the Act, its decision to refuse to order continuance as well as its decision to order it, should be reviewable * * *."

A reading of the legislative history of the Transportation Act of 1958 [6] indicates that Section 13a was designed to permit railroads, at their option, to have the Interstate Commerce Commission, rather than State Commissions, pass upon discontinuances or changes in the operation or service of trains. There is nothing to suggest that Congress intended to deny judicial review of pas-

---

5. It is well established that judicial review is not available to review a decision of the ICC *not to enter upon an investigation of a proposed discontinuance* since such decision is committed to the exclusive discretion of the Commission. State of New Jersey v. United States, 168 F.Supp. 324 (D.C.1958), affirmed Bergen County v. United States, 359 U.S. 27, 79 S.Ct.

807, 3 L.Ed.2d 625 (1959); Sludden v. United States, 211 F.Supp. 150 (M.D.Pa. 1962). These cases do not apply here, however, as in the present case the Commission did investigate, conducted hearings, and issued a thirty-one page Report of its findings and conclusions.

6. 2 U.S.Code Cong. and Admin.News p. 3456 (1958).

senger discontinuances. As was noted in a recent United States Supreme Court opinion in which judicial review under the Federal Food, Drug, and Cosmetic Act was considered:

"The question is phrased in terms of 'prohibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681, decided May 22, 1967.

Later on in the opinion, Mr. Justice Harlan, speaking for the Court, quoted from Jaffe, Judicial Control of Administrative Action 336–359 (1965), as follows:

"The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent."

We agree with the Vermont Court and " * * * fail to find convincing evidence that the Congress intended the unusual[7] and concededly unfair result of granting judicial review of the Commission's determination solely to the roads, and not to opposing parties."

■ Having determined that review jurisdiction is present, we move to the question of the propriety of the District Judge issuing a temporary restraining order before the Commission's order became final. As matters now stand, a petition for reconsideration is pending before the Commission. At the hearing on May 15, 1967, as plaintiffs prepared to present evidence of irreparable damage, Pennsylvania stipulated that plaintiffs' affidavits of irreparable damage were to be accepted as true for the purpose of the issuance of the temporary restraining order. After considering the arguments advanced by plaintiffs as to the effect on them and their cause if the trains were discontinued while the petitions for reconsideration were pending before the Commission, we agree that effective judicial review of the administrative determination would be impaired, and irreparable harm to the plaintiffs and the public would result, if such discontinuances were allowed to take place at this time. We are not, of course, at this time adjudicating the merits or reviewing a final administrative order. We are merely holding that the District Judge acted properly in restraining Pennsylvania from discontinuing these trains until such time as a final order is issued by the Commission or until further order of the Court.

■ Finally, we consider Pennsylvania's position that plaintiffs should be required to post security under Rule 65(c). In considering the applicability of 65(c) we should not overlook that portion of 65(e) which states that Rule 65 does not modify Title 28 U.S.C. § 2284,[8] relating to actions required by Act of Congress to be heard and determined by a District Court of three Judges. Nevertheless, Pennsylvania contends that the temporary relief granted here was not granted pursuant to § 2284 because such relief under §§ 2284 and 2325 is appropriate only after a final order of the Commission. Consequently Pennsylvania argues that the District Judge was exercising his general equitable powers to which the security provisions of 65(c) apply.

The matter of posting security is further complicated by plaintiffs' representation to the Court that they cannot commit themselves to providing a bond and, if the Court orders the posting of such security, the plaintiffs will be un-

---

7. Section 10 of the Administrative Procedure Act provides for judicial review to any person suffering legal wrong or adversely affected or aggrieved by any agency action except so far as (1) statutes preclude judicial review, or (2) agency action is by law committed to agency discretion. 5 U.S.C. § 1009.

8. Section 2284 does not require security as a prerequisite to the issuance of a temporary restraining order.

able to proceed. In approaching the problem of security we are reminded that 28 U.S.C. § 2325 provides that only a three-Judge Court under § 2284 is empowered to issue an interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission. In their complaint, plaintiffs seek such relief from this Court. If the petition for rehearing had been denied or otherwise disposed of prior to the expiration of the four-month stay granted by the Commission, then, mindful of our holding that we have review jurisdiction, plaintiffs would have been entitled to seek injunctive relief under § 2284(3) and § 2325 *without the necessity of posting security.*[9] In the meantime, under the circumstances of this case, a requirement that plaintiffs post security would stifle and, indeed, take away their right to judicial review. An awareness of the statutory scheme in such cases should persuade us against such a result. If the Commission had acted finally within the four-month stay period, the plaintiffs could resort to judicial review and relief without limitation. They should not be denied effective judicial review because of circumstances outside their control.

The motion of defendant, Pennsylvania Railroad Company, will be denied.

## SUPPLEMENTAL OPINION AND ORDER

Since the drafting of this opinion, the Interstate Commerce Commission, on July 14, 1967, issued an order denying plaintiffs' petition for reconsideration. Thus, the Commission action became final and the temporary restraining order issued by the District Judge on May 15, 1967, expired by its terms. On July 14, 1967, the District Judge issued another temporary restraining order to

remain in effect until July 20, 1967, noting, in the order, that the present motion raised jurisdictional questions which had not been disposed of by the three-Judge Court. On July 19, 1967, after conference with counsel, it was stipulated and agreed that a further temporary restraining order be issued until August 3, 1967, at which time a hearing will be held before the three-Judge Court.

Now, July 20, 1967, in accordance with the opinion this day filed, the motion of Pennsylvania Railroad Company to dissolve the temporary restraining order issued May 15, 1967, or, in the alternative, to vacate the order pending the posting of security, is denied.

---

9. See Florida East Coast Railway Company v. United States, 228 F.Supp. 340 (M.D.Fla.1964) wherein it was held that the statutory scheme embodied in the Interstate Commerce Act, the Administrative Procedure Act, and the three-Judge Court provisions of Title 28, contemplates that in the course of orderly procedure there may be judicial review of Interstate Commerce Commission orders and that the posting of an indemnity bond should not be required as an incident to the issuance of a temporary restraining order.