**CITY OF WILLIAMSPORT et al.,
Plaintiffs,**

v.

**UNITED STATES of America, Interstate
Commerce Commission and the Pennsylvania Railroad Company, Defendants.**

*Civ. No. 9996.*

United States District Court
M. D. Pennsylvania.

March 4, 1968.

Judgment Affirmed June 17, 1968.

See 88 S.Ct. 2286.

Jerome Nelson, Office of General Counsel ICC, Washington, D. C., for ICC.

Henry C. Perciballi, City Sol., Williamsport, Pa., Anthony Manguso, Corp. Counsel, Abraham I. Okun, Asst. Corp. Counsel, Buffalo, N. Y., George Hamilton Forman, Buffalo, N. Y., Samuel C. Ranck, City Sol., Milton, Pa., Harvey Gelb, Robert P. Casey, Scranton, Pa., Thomas Park Shearer, Pittsburgh Pa., Gordon P. MacDougall, Washington, D. C., for plaintiffs.

James H. Stewart, Jr., of Nauman, Smith, Shissler & Hall, Harrisburg, Pa., Donald A. Brinkworth, Pittsburgh, Pa., for defendant Pennsylvania R. Co.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for the United States.

Campana & Campana, Williamsport, Pa., for City of Williamsport.

Before FREEDMAN, Circuit Judge, and SHERIDAN and NEALON, District Judges.

## OPINION OF THE COURT

NEALON, District Judge.

In this case, defendant railroad, pursuant to the provisions of Section 13a(1) [1] of the Interstate Commerce Act, filed a notice of discontinuance of its passenger trains Nos. 570 and 571 between Buffalo, New York, and Baltimore, Maryland. An investigation was ordered by the Interstate Commerce Commission (Commission) and numerous hearings were held. At the conclusion thereof, defendant was directed to continue operation of both trains between Baltimore and Harrisburg, Pennsylvania, the Northern segment, for one year, but was permitted to discontinue operation of these trains between Harrisburg and Buffalo, the Southern segment. Plaintiffs filed this action requesting the Court to enjoin and set aside the Order of the Commission and to order defendant to restore full service of its trains 570 and 571. [2]

As we view this proceeding, the principal issue in the case is whether the Commission had the authority to require operation of both trains in part, from Baltimore to Harrisburg, thus allowing discontinuance of the remaining portion between Harrisburg and Buffalo. Defendant contends that Section 13a(1) authorizes the action taken by the Com-

---

1. 49 U.S.C.A. § 13a(1) provides:

"(1) A carrier or carriers subject to this chapter, if their rights with respect to the discontinuance or change, in whole or in part, of the operation or service of any train or ferry operating from a point in one State to a point in any other State or in the District of Columbia, or from a point in the District of Columbia to a point in any State, are subject to any provision of the constitution or statutes of any State or any regulation or order of (or are the subject of any proceeding pending before) any court or an administrative or regulatory agency of any State, may, but shall not be required to, file with the Commission, and upon such filing shall mail to the Governor of each State in which such train or ferry is operated, and post in every station, depot or other facility served thereby, notice at least thirty days in advance of any such proposed discontinuance or change. The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithtanding. Upon the filing of such notice the Commission shall have authority during said thirty days' notice period, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change. Upon the institution of such investigation, the Commission, by orders served upon the carrier or carriers affected thereby at least ten days prior to the day on which such discontinuance or change would otherwise become effective, may require such train or ferry to be continued in operation or service, in whole or in part, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective. If, after hearing in such investigation, whether concluded before or after such discontinuance or change has become effective, the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order. The provisions of this paragraph shall not supersede the laws of any State or the orders or regulations of any administrative or regulatory body of any State applicable to such discontinuance or change unless notice as in this paragraph provided is filed with the Commission. On the expiration of an order by the Commission after such investigation requiring the continuance or restoration of operation or service, the jurisdiction of any State as to such discontinuance or change shall no longer be superseded unless the procedure provided by this paragraph shall again be invoked by the carrier or carriers."

2. The parties were before this Court previously on preliminary matters. See 273 F.Supp. 899 (1967).

mission in this case, while plaintiffs argue that "(t)he ordering language of section 13a(1) permits continuance, *in whole or in part*, but such partial continuance is dependent upon the original notice invoking jurisdiction having requested a partial discontinuance." Specifically, plaintiffs assert "(a)bsent proper notice, the I.C.C. is without power to order a partial continuance or to permit a partial discontinuance because any order must be based upon findings, and the findings required to be made by section 13a(1) are specifically tied down to such *discontinuance* as is contained in the notice and made the subject of the investigation."

 Section 13a was enacted by Congress as part of the Transportation Act of 1958. The legislative history of that Act reveals Congress' concern about the financial plight of railroads, attributable in part to the losses sustained in operating passenger trains. To discontinue these trains before the enactment of § 13a, the railroads were required in all cases to seek authority from each of the States served. See 104 Cong.Rec. 10842–10843, 10851. Without concurrence of all the States affected, the railroad might be compelled to continue operations despite serious losses. New Jersey v. New York, Susquehanna & Western Railroad Co., 372 U.S. 1, 83 S.Ct. 614, 9 L.Ed.2d 541 (1963). The purpose of Congress in enacting Section 13a(1) was remedial [3] and this statute gave a railroad the right to discontinue interstate passenger trains by serving a notice and supporting statement on the Commission and by posting notices in the trains and stations involved. In addition, notices and statements were to be served on the Governors and the appropriate regulatory agencies of each State. Within thirty days of notice, the Commission has the authority to enter upon an investigation of such discontinuance or change. If the Commission decides not to investigate, then the railroad may discontinue the trains as of the date designated in the notice. See State of New Jersey v. United States, 168 F.Supp. 324 (D.C.1958), affirmed 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed.2d 625 (1959). If the Commission decides to investigate the proposed discontinuance, then the Commission may require " * * * such train or ferry to be continued in operation or service, *in whole or in part*, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective." (Emphasis supplied) After the hearing in such investigation has been concluded, the Commission, after appropriate statutory findings are made, may " * * * require the continuance or restoration of operation or service of such train or ferry, *in whole or in part*, for a period not to exceed one year from the date of such order." (Emphasis supplied.) Thus, recognizing that under the statute a railroad is free to discontinue the operation or service absent an affirmative order of the Commission, it would appear that Congress intended to confer authority on the Commission to order a partial continuance even though the railroad sought to discontinue the whole run from point of origin to point of termination. This has been the interpretation of the Commission in prior cases,[4] and such interpretation by the agency charged with the administration of the statute is entitled to great weight. Levinson v. Spector Motor Co., 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). What the Commission did in the case before us was to order the continuance of the operation of the trains between Harrisburg and Baltimore, while, at the same time, allowing the discontinuance of the operation

3. See New Jersey v. New York, Susquehanna & Western Railroad Co. (supra).

4. See New York Central R. Co. Discontinuance of Service, 307 I.C.C. 167, 171 (1959); Louisville & Nashville R. Co. Discontinuance of Service, 307 I.C.C. 173, 186 (1959); Chicago, M. St. P. & P. R. Co. Discontinuance of Passenger Train Service, 317 I.C.C. 691, 715–716 (1961); Boston & Maine Corp. Discontinuance of Passenger Train Service, 324 I.C.C. 418, 445–446 (1965).

between Harrisburg and Buffalo which, in effect, required continuance "in part" of the operation sought to be discontinued.[5] The contention that the Commission is restricted to the discontinuance sought in the original notice and cannot order a partial continuance is untenable. This would place the Commission in an administrative straightjacket and would not comport with the statutory purpose. Its effect would be to penalize the railroad for seeking to discontinue more of the operation than the Commission ultimately decided it was proper to do. There is nothing in the statute or legislative history suggesting such a limitation. As was pointed out in People of State of California v. United States, 258 F.Supp. 950, 954 (N. D.Cal.1966), a train discontinuance case under 13a(1):

> "We see no reason for imposing an illogical restriction—one which is at odds with the purpose of Congress—upon a statute which was deliberately drawn in broad and flexible terms."

Moreover, plaintiffs cannot assert prejudice as they were afforded adequate opportunity to oppose the partial discontinuance between Harrisburg and Buffalo.[6]

The remaining points raised by plaintiffs go to the Commission's findings. The function of this Court is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing Court is without authority to intervene. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). We see no reason to disturb the findings and Order of the Commission. The complaint will be dismissed.

---

5. The partial discontinuance between Harrisburg and Buffalo concerned an interstate operation and remained a matter for 13a(1) cognizance.

6. The proceedings began by notice filed with the Commission on December 7, 1966, wherein the railroad proposed discontinuance of the entire run under Section 13a(1). On January 3, 1967, the Commission instituted an investigation and required the carrier to continue operating the trains for the maximum four-month period authorized by statute. A total of ten days of hearings were held in Harrisburg, Pennsylvania; Williamsport, Pennsylvania; Olean, New York; Buffalo, New York, and Washington, D. C. These hearings consumed over 1200 pages of transcript and involved over 50 exhibits. The division of the operation into Buffalo-Harrisburg and Harrisburg-Baltimore segments was first considered at a hearing held February 24, 1967. Plaintiffs were given a one-week continuance to March 3, 1967, in order to prepare evidence relating to the Northern segment. Testimony on this aspect of the case was taken March 3, 6, 7, and 15, 1967. On May 12, 1967, the Division issued its report, finding that the Northern segment might be discontinued while the Southern segment should be continued.