**PENN CENTRAL COMPANY, Plaintiff,**

v.

**PUBLIC UTILITIES COMMISSION OF the STATE OF CONNECTICUT and Eugene S. Loughlin, Harold F. Keith, and Raymond S. Thatcher, as Members of the Public Utilities Commission of the State of Connecticut, Defendants.**

**Civ. No. 12961.**

United States District Court
D. Connecticut.

Jan. 31, 1969.

John F. Bomster, New Haven, Conn. (Robert W. Blanchette and George E. Gill, New Haven, Conn., on the brief), for plaintiff.

John K. Jepson, Asst. Atty. Gen., State of Conn., Hartford, Conn., for defendants.

TIMBERS, Chief Judge.

Plaintiff, Penn Central Company, having filed a verified complaint in which it seeks preliminary and permanent injunctive relief against defendant Public Utilities Commission of the State of Connecticut and its members (PUC), has moved, pursuant to Rule 65, Fed.R.Civ.P., for a preliminary injunction. Plaintiff seeks to enjoin the PUC from enforcing, or imposing sanctions in connection with, a Cease and Desist Order issued by the PUC on January 28, 1969. The Court, after hearing argument of counsel for the respective parties on January 31, 1969, holds that plaintiff's motion for a preliminary injunction should be granted.

## JURISDICTION

Jurisdiction is founded upon 28 U.S.C. § 1337.[1]

## QUESTIONS PRESENTED

(1) Does implementation of the statutory procedures specified in Section 13a (1) of the Interstate Commerce Act, 49 U.S.C. § 13a(1) (1964), preclude interference by state authorities?

(2) Has plaintiff demonstrated that it is entitled to equitable relief by preliminary injunction?

## FINDINGS OF FACT

The essential facts are undisputed.

(1) On December 5, 1968, plaintiff's predecessor, the Trustees of the New York, New Haven and Hartford Railroad Company (New Haven), filed with the Interstate Commerce Commission (ICC) a notice and statement concerning discontinuance of certain interstate passenger service, pursuant to the procedure prescribed by 49 U.S.C. § 13a(1).[2]

(2) Copies of the said notice and statement were sent on December 5, 1968 to the Governor of the State of Connecticut and the appropriate official of the PUC.

(3) On December 23, 1968, the ICC directed that the New Haven continue for four months the service which it had requested be discontinued, pending an

---

1. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

2. "A carrier or carriers subject to this chapter, if their rights with respect to the discontinuance or change, in whole or in part, of the operation or service of any train or ferry operating from a point in one State to a point in any other State or in the District of Columbia, or from a point in the District of Columbia to a point in any State, are subject to any provision of the constitution or statutes of any State or any regulation or order of (or are the subject of any proceeding pending before) any court or an administrative or regulatory agency of any State, may, but shall not be required to, file with the Commission, and upon such filing shall mail to the Governor of each State in which such train or ferry is operated, and post in every station, depot or other facility served thereby, notice at least thirty days in advance of any such proposed discontinuance or change. The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithstanding. Upon the filing of such notice the Commission shall have authority during said thirty days' notice period, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change. Upon the institution of such investigation, the Commission, by orders served upon the carrier or carriers affected thereby at least ten days prior to the day on which such discontinuance or change would otherwise become effective, may require such train or ferry to be continued in operation or service, in whole or in part, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective. If, after hearing in such investigation, whether concluded before or after such discontinuance or change has become effective, the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order. The provisions of this paragraph shall not supersede the laws of any State or the orders or regulations of any administrative or regulatory body of any State applicable to such discontinuance or change unless notice as in this paragraph provided is filed with the Commission. On the expiration of an order by the Commission after such investigation requiring the continuance or restoration of operation or service, the jurisdiction of any State as to such discontinuance or change shall no longer be superseded unless the procedure provided by this paragraph shall again be invoked by the carrier or carriers."

investigation by the ICC of the factual claims asserted by the New Haven.

(4) Following the acquisition of the properties and common carrier franchises of the New Haven by plaintiff, and at the request of plaintiff, the ICC on January 21, 1969 vacated so much of its order of December 23, 1968 as had required continuation of the service in question during the pendency of its investigation. The ICC retained jurisdiction to restore such service if circumstances warranted.

(5) By order of January 28, 1969, the PUC ordered plaintiff to cease and desist from eliminating or reducing passenger train service within the State of Connecticut (scheduled to become effective at 12:01 A.M., Sunday, February 2, 1969) pending a hearing to be held before the PUC on February 18, 1969.

(6) On January 29, 1969, plaintiff commenced the instant action.

(7) Pursuant to an order to show cause issued January 30, 1969 by Honorable Robert C. Zampano, United States District Judge for the District of Connecticut, a hearing was held today before the undersigned to determine whether a preliminary injunction should issue.

## CONCLUSIONS OF LAW

■ (1) This Court has jurisdiction over the subject matter of, and the parties to, this action brought pursuant to 28 U.S.C. § 1337 with respect to a controversy arising out of ICC proceedings initiated under 49 U.S.C. § 13a(1) (1964).

■ (2) Where, as here, irreparable harm has been demonstrated and the moving party has shown substantial probability of success in the underlying action, relief from threatened action may be granted by a preliminary injunction.

■ On the facts of the instant case, plaintiff is entitled to a preliminary injunction.

## OPINION

By passage of the Transportation Act of 1958,[3] Congress sought to alleviate the deteriorating railroad situation. Prior to this Act, the ICC's jurisdiction over proposed operational discontinuances of railroads was limited to the complete abandonment of a line of track. By amendment, Section 13a(1) of the Interstate Commerce Act was added; it provided procedures for the discontinuance of or change in—in whole or in part—the operation or service of a train from a point in one state to a point in another. This statute, once implemented at the option of the railroad, intentionally was made exclusive; thus, local regulation, which had hindered modification of passenger service operations in the past, was effectively foreclosed by Congress. See 49 U.S.C. § 13a(1); and see generally New Jersey v. New York, Susq. & Western R. R., 372 U.S. 1 (1963); Williamsport v. United States, 282 F.Supp. 46 (M.D.Pa.), aff'd, 392 U.S. 642 (1968) (per curiam); U.S.Code Cong. & Ad.News 3456, 3467–69 (1958).

■ Prior to its acquisition by Penn Central, the bankrupt New Haven Railroad, through its trustees, filed papers with the ICC requesting certain discontinuances and changes in part of its interstate passenger service. Initially the ICC directed that present service be continued for four months during which time it would conduct an investigation. However, upon reconsideration of that order, at the request of Penn Central, the ICC vacated so much of its first order as had required the continuation of present service during the pendency of its investigation. Under the provisions of 49 U.S.C. § 13a(1), and by virtue of the vacation of its first order, the ICC having not "otherwise ordered", plaintiff had the authority to discontinue the operations previously noticed, the laws of any state or orders of any state commission notwithstanding.

3. Pub.L. No. 85–625, 72 Stat. 568.

## I.

The statutory language clearly supports the position taken by plaintiff at the hearing on the preliminary injunction. One court has squarely so held. Pennsylvania R. R. v. Sharfsin, 369 F.2d 276 (3 Cir. 1966), cert. denied, 386 U.S. 922 (1967). In *Sharfsin,* the court affirmed the granting of an injunction against the State of Pennsylvania PUC prohibiting its enforcement of an order commanding the railroad to restore interstate service previously discontinued pursuant to 49 U.S.C. § 13a(1). The court held that by this statute, in order to insure effective regulation of interstate railroad operations, Congress had granted exclusive jurisdiction to the ICC once proceedings had been commenced thereunder.[4]

■ In *Sharfsin,* the railroad initially had instituted discontinuance proceedings before the Pennsylvania PUC; even though state jurisdiction thus had attached prior to any proceedings before the ICC, subsequent ICC jurisdiction under § 13a(1) was held to have foreclosed further action by the state and to have nullified the state's prior action. In the instant action, the railroad initiated proceedings before the ICC and the Connecticut PUC unilaterally has attempted to circumvent the statutory command of § 13a(1). On the present state of the record, the Court holds that such action by the PUC is beyond the scope of its jurisdiction.

## II.

■ Before a preliminary injunction may issue against a public instrumentality, the movant must demonstrate a higher probability of success and danger of irreparable harm than would be required against a private party. Yakus v. United States, 321 U.S. 414, 440–41 (1944). Nonetheless, the Court holds that in the instant case the requisite showing has been made to justify the issuance of a preliminary injunction.

In argument before the Court, counsel for the PUC did not seriously challenge the likelihood of plaintiff's ultimate success in the underlying action. Although the PUC by no means is foreclosed from contesting all issues at the trial on the merits, on the present state of the record the Court finds that plaintiff's probability of success in the underlying action fulfills the requisite standard to justify the issuance of a preliminary injunction.

Defendant's main argument[5] was that plaintiff has failed to demonstrate the necessity of a preliminary injunction to avoid alleged irreparable injury to it, claiming that adequate relief can be obtained under state law. Under Conn.Gen. Stat. §§ 16–35[6] and 16–39,[7] a railroad

---

4. The court further held that § 13a(1) did not violate due process, did not constitute an improper delegation of legislative power, and did not contravene the doctrine of full faith and credit.

5. Other grounds raised briefly by defendant included questions of notice and clean hands.

6. "Any company, town, city, borough, corporation or person aggrieved by any order, authorization or decision of the commission, except an order, authorization or decision of the commission approving the taking of land, in any matter to which he or it was or ought to have been made a party, may appeal therefrom to the superior court within thirty days after the filing of such order, authorization or decision. The party so appealing shall give bond to the state, with sufficient surety,

for the benefit of the adverse party, in such sum as the commission fixes, to pay all costs in case he or it fails to sustain such appeal."

7. "Each such appeal shall be a supersedeas of the order, authorization or decision appealed from, provided the court to which any such appeal is brought, or, if such court is not in session, any judge of the superior court, may, at any time, order that such appeal shall not so operate if, in the opinion of such court or judge, the appeal is brought for purposes of delay or if justice or equity or public safety or expediency so requires; or such court or judge may order that such appeal shall so operate only upon compliance by the parties, or any of them, with such terms or conditions as such court or judge may determine."

can appeal an order of the PUC to the Superior Court; the pendency of such appeal supersedes the effect of the PUC's order unless judicially determined by the court that other conditions are appropriate.

The Court does not agree that where the law appears crystal clear in the underlying action all state remedies must be exhausted before the criterion of irreparable harm is satisfied. As noted by plaintiff, such a holding would subject the discontinuance of any interstate operation to the varying procedures of each of the states affected[8]; it was precisely such fragmentation which the Transportation Act of 1958 sought to avoid. In addition, the supersedeas provided in Conn.Gen.Stat. § 16–39 can be nullified if the Superior Court determines that "public safety or expediency so requires"; therefore, the guarantee against irreparable injury supposedly provided by this statute is not so certain as to afford what the Court believes should be adequate protection for the federally created rights of the railroad. Finally, where the federal law is as clear as the language in § 13a(1), it would seem to be a meaningless procedure to withhold injunctive relief pending an appeal to the Superior Court, since unless that court held, as this Court holds, that the jurisdiction of the PUC has been preempted by § 13a(1), this Court would be compelled to issue an immediate injunction against the operation of such Superior Court decree, under the mandate of § 13a(1) itself.

■ Plaintiff's demonstration of irreparable harm consisted of a claim of continued lost revenues, possibility of fines and other harassment, and the inconvenience and expense of altering its plans to discontinue the disputed operations at 12:01 A.M. on Sunday, February 2, 1969. The Court holds, especially when viewed in the context of the probability of plaintiff's success in the underlying action, that plaintiff has sufficiently demonstrated the likelihood of irreparable harm.

On the instant motion for a preliminary injunction, the precise issue raised and determined is an extremely narrow one. The Court should not and will not weigh the merits of the ICC's determination that plaintiff may discontinue certain interstate operations. Instead, focusing upon the clear jurisdictional conflict which has been presented, the Court holds that plaintiff is entitled to the issuance of a preliminary injunction.

Under the circumstances of the instant case, the Court holds that no security should be required to be given by plaintiff as a condition to the granting of a preliminary injunction; and none has been requested.

A separate preliminary injunction order, prepared by the Court, will be entered simultaneously herewith.

## PRELIMINARY INJUNCTION

This cause having come on for hearing before the undersigned on January 31, 1969, on plaintiff's motion for a preliminary injunction brought on by an order to show cause issued by Honorable Robert C. Zampano on January 30, 1969, copies of said order to show cause and the papers on which it was issued having been duly served upon defendants as acknowledged by their attorney in open court today; and

The Court having considered the verified complaint filed January 29, 1969, and the exhibits thereto attached; plaintiff's motion for a preliminary injunction filed January 30, 1969; the moving affidavits of K. T. Kelly and James M. Finch,

---

8. In this case, the operations being discontinued service Massachusetts, Rhode Island and New York, as well as Connecticut.

each sworn to January 29, 1969; and the briefs of counsel; and

The Court having fully heard and considered the arguments of counsel in open court today, at the conclusion of which the Court reserved decision on plaintiff's motion for a preliminary injunction; and

The Court simultaneously herewith having made findings of fact and conclusions of law, pursuant to Rule 52(a), Fed.R.Civ.P.

NOW, THEREFORE, it is this 31st day of January, 1969, ORDERED as follows:

(1) That, pending final determination of this action, defendants, and each of them, and their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, or any of them, be, and they hereby are, enjoined

(a) From in any manner enforcing the Cease and Desist Order of the Public Utilities Commission of the State of Connecticut dated January 28, 1969; and

(b) From in any manner imposing, or causing or attempting to have imposed, any penalties, civil or criminal, for noncompliance therewith.

(2) That the within preliminary injunction be, and the same hereby is, made effective forthwith upon the filing of the same in the office of the Clerk of this Court.

(3) That the Clerk of this Court be, and he hereby is, directed forthwith to deliver sufficient certified copies of this preliminary injunction to the United States Marshal for the District of Connecticut for service upon the attorney for defendants on their behalf, such service being hereby ordered to constitute sufficient notice to all defendants of the entry of the within preliminary injunction.