**CITY OF CHICAGO, Plaintiff,**

Greater Columbus Transportation Bureau, City of Jackson, Tennessee Public Service Commission, Railway Labor Executives' Association, Mississippi Public Service Commission, Illinois Commerce Commission and Brotherhood of Locomotive Engineers, Intervening plaintiffs,

v.

**UNITED STATES** of America, Interstate Commerce Commission, Illinois Central Railroad Company, Central of Georgia Railway Company and Seaboard Coast Line Railroad Company, Defendants.

No. 68 C 2184.

United States District Court
N. D. Illinois, E. D.
June 2, 1969.

Raymond F. Simon, Corp. Counsel, Bernard Rane and Mark Goldstein, Asst. Corp. Counsels, William J. Scott, Atty. Gen., Edward G. Finnegan, Sp. Asst. Atty. Gen., Chicago, Ill., C. E. Walker, Columbus, Ga., Robert J. Holt, Jr., Asst. City Atty., Jackson, Tenn., Eugene W. Ward and J. Kenneth Atkins, Nashville, Tenn., Richard H. Kraushaar, Cleveland, Ohio, William F. Black and Carl L. Evans, Montgomery, Ala., Bennett E. Smith, Jackson, Miss., Edward J. Hickey, Jr., and William G. Mahoney, Gordon P. MacDougall, Washington, D. C., for plaintiffs.

Barry Roberts, Asst. Gen. Counsel, ICC, Washington, D. C., for the ICC.

Howard M. Hoffmann, Asst. U. S. Atty., Chicago, Ill., for the United States.

Robert Mitten, John H. Doeringer and John W. Foster, Chicago, Ill., for defendant Illinois Central R. Co.

Nuel D. Belnap and Albert S. Tabor, Jr., Chicago, Ill., for defendant Seaboard Coast Line R. Co.

Harry R. Begley, Chicago, Ill., and John B. Miller and Julian C. Sipple, Savannah, Ga., for defendant Central of Ga. Ry. Co.

Before SWYGERT, Circuit Judge, and HOFFMAN and MAROVITZ, District Judges.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Review of Interstate Commerce Commission Order

This is an action to have a three-judge court review and set aside an order of the Interstate Commerce Commission under section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a(1), in Finance Docket Numbers 25143, 25150, and 25151. The consolidated decision of the Commission, Division 3, was dated November 12, 1968, and served two days later. Reported in 333 I.C.C. 853, the decision is known as *Illinois Central Railroad Company change in service of trains 9 and 10 between Chicago and Carbondale, Illinois and discontinuance between Carbondale, Illinois and Birmingham, Alabama (No. 25143), Central of Georgia Railway Company discontinuance of trains 10 and 9 between Birmingham, Alabama and Albany, Georgia (No. 25151), and Seaboard Coast Line Railroad Company discontinuance of trains 17 and 18 between Albany, Georgia and Jacksonville, Florida (No. 25150).*

Pursuant to 49 U.S.C. § 13a(1), the defendant railroads, the Illinois Central Railroad Company (IC) on June 13, 1968, and the Seaboard Coast Line Railroad Company (SCL) and the Central of Georgia Railway Company (CGa) on June 14, 1968, sought to discontinue their respective segments of the operation of the Seminole Limited (Seminole), a passenger train operating daily between Carbondale, Illinois, and Jacksonville, Florida, effective July 14, 15, and 16, 1968. The IC operates the train between Chicago, Illinois, and Birmingham, Alabama. The CGa operates it between Birmingham and Albany, Georgia. The SCL is responsible for the southernmost portion of the trip between Albany and Jacksonville, Florida. In addition, the IC also proposed minor changes in service as to that portion of the Seminole running from Chicago to Carbondale. The proposed changes included a change in schedule as well as the elimination of stops at Gilman and Tuscola, Illinois.

Following the railroads' notice of discontinuance, the Commission by order of July 2, 1968, instituted an investigation and, at the same time, required the railroads to continue operation of their present schedules pending a hearing and decision, but in any event for periods not longer than four months beyond the effective dates of the proposed discontinuance dates. 333 I.C.C. at 384. Hearings were held on August 12–27, 1968, in various places in Alabama, Georgia, and Tennessee. The plaintiffs in this action were among the parties filing briefs at those hearings. The commission found that the continued operation of the Seminole train between Carbondale, Illinois, and Jacksonville, Florida, "is not required by

the public convenience and necessity, and that continued operation thereof would unduly burden interstate and foreign commerce." 333 I.C.C. at 875. It further found that the IC's operation of its passenger train No. 10 to and from Gilman, Illinois, was required by public convenience and necessity and would not unduly burden interstate commerce. *Id.* Thus, the decision of the Commission permitted the three railroads to discontinue operation of their share of the Seminole south of Carbondale, Illinois, and also permitted the IC to effect all but one of its proposed changes in service north of Carbondale.

· While service was to be discontinued on November 15, 1968, Judge Alexander H. Napoli, sitting as Emergency Judge of this District, responded to an emergency motion of the City of Chicago by issuing a temporary restraining order against the railroads requiring them to continue the operation of the Seminole. This court continued that order pending a hearing by a three-judge panel on various jurisdictional questions raised by defendant railroad companies. On December 16, 1968, plaintiffs filed petitions for reconsideration with the Commission. Those petitions were denied on February 3, 1969. On the following day, a hearing was held here on the defendants' jurisdictional motions. Said motions were denied by an order entered February 14, 1969.

■ On May 23, 1969, a final hearing was held in order to determine whether we should enforce or set aside in whole or in part, the order of the Commission. 28 U.S.C. § 1336. The principle issue raised by plaintiffs is whether the Commission has jurisdiction to consider the proposal filed by the defendant IC. Plaintiffs claim that because the changes proposed north of Carbondale are to take place wholly in Illinois, the Commission could not consider them in the context of a section 13a(1) proceeding. To do so according to plaintiffs is to taint the entire case and require that all of the Commission's findings be set aside.

■ Plaintiffs have cited no authority for their position and their theory is without any rational basis. Section 13a (1) is a remedial statute which reflects Congressional concern over the serious financial losses often sustained in operating interstate passenger trains. New Jersey v. New York, Susquehanna & Western Railroad Co., 372 U.S. 1, 5, 83 S.Ct. 614, 9 L.Ed.2d 541 (1963); City of Williamsport v. United States, 282 F. Supp. 46, 48 (M.D.Pa.1968), aff'd per curiam 392 U.S. 642, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968). The basic jurisdictional requirement of Section 13a(1) is quite elementary. The train for which a discontinuance or change in service is sought must be "operating from a point in one State to a point in any other State * * *." 49 U.S.C. § 13a(1). The IC operates its Seminole trains, Trains 9 and 10, across five states: Illinois, Kentucky, Tennessee, Mississippi, and Alabama. It does not operate one set of trains between Chicago and Carbondale and another between Carbondale and Birmingham. Rather, it runs a single set of trains many hundreds of miles across numerous state boundaries. Consequently, at the time of the filing and posting of the IC's notices, the physical limits of Trains 9 and 10 were interstate in character and, therefore, within the scope of 49 U.S.C. § 13a(1). New Jersey v. New York, Susquehanna & Western Railroad Co., 372 U.S. 1, 4, 83 S.Ct. 614 (1963).

■ Once it had jurisdiction over the trains, the Commission pursuant to Section 13a(1) could accept or reject some or all of the proposed changes and discontinuance. City of Williamsport v. United States, 282 F.Supp. 46, 48–49 (M.D. Pa.1968), aff'd per curiam, 392 U.S. 642, 88 S.Ct. 2286 (1968). Thus, the Commission could have dealt solely with the discontinuance south of Carbondale, the changes in service north of Carbondale or, as it chose to do, both aspects of the IC's proposal. That the Commission's decision results in the operation of a purely intrastate train from Chicago to Carbondale, Illinois, is certainly no bar to the assumption of jurisdiction over an

initially interstate operation. In fact, the Commission has on other occasions ordered the discontinuance of certain portions of an interstate train while requiring, or leaving in operation, service over a remaining segment which falls wholly within one state. See, e. g., Penn Central Co. Discontinuance of Train, 333 ICC 768 (1968); Erie-Lackawanna Railroad Co. Discontinuance of Trains, 324 ICC 795 (1963); New York, New Haven & Hartford Railroad Co., 320 ICC 714 (1964). The Commission's interpretation of its authority in this regard is "entitled to great weight." City of Williamsport v. United States, 282 F.Supp. 46, 48 (M.D.Pa.1968), aff'd per curiam, 392 U.S. 642, 88 S.Ct. 2286 (1968). As in *Williamsport, Id.* at 49, and California v. United States, 258 F.Supp. 950, 954 (N.D.Cal.1966), we see no reason to impose illogical restrictions on this broad, flexible, and remedial statute. Rather, we find that the Commission had authority under 49 U.S.C. § 13a(1) to dispose of the proposals of the IC with regard to the Seminole.

■ Plaintiffs have also suggested that the Commission erred in failing to hold hearing in Illinois. Once again, plaintiffs contention is without support in cases or logic. Nothing in Section 13a (1) requires hearings at any one particular place or at more than one place. Further, none of the plaintiffs ever made a formal request for a hearing in Illinois. This is the first time that such a request has been seriously made by any party. Plaintiffs' real concern was always with the discontinuance of the southern leg of the Seminole, not with the minor changes proposed for the northern segment. In view of this concern, the Commission acted properly and reasonably in holding eight days of hearings in six cities in the three southern states directly affected by the proposed discontinuance.

■■ Plaintiffs' final contention is that the Commission's ultimate conclusions are not supported by substantial evidence. Judicial review of the findings of an administrative agency is quite

restricted. Illinois Central Railroad Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Comm., 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

"The function of this Court is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing Court is without authority to intervene. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946)."

City of Williamsport v. United States, 282 F.Supp. 46, 49 (M.D.Pa.1966), aff'd per curiam, 392 U.S. 642, 88 S.St. 2286 (1966).

As to the adequacy of alternate service, the Commission found that two other trains run on alternate days between Chicago, Illinois, and Jacksonville, Florida. See 333 ICC 858, 876–78 (1968). The "City of Miami," which is operated by the IC, runs over the exact route served by the Seminole trains. It serves all of the major stations served by the Seminole. On alternate days, the "South Wind," operated jointly by the Penn Central Co., the Louisville & Nashville Railroad Co., and the SCL, serves four major Seminole stops, Chicago, Birmingham, Waycross, Georgia, and Jacksonville, as well as Louisville, Kentucky, and Indianapolis, Indiana. In addition, there are a variety of bus and air facilities which provide transportation from the southeast to the midwest as well as servicing points in between. 333 ICC 858–59 (1968). Similarly, the Commission found that the Seminole south of Carbondale was operating at an increasing loss, that mail transportation was being eliminated, that passenger service was declining, and that employee displacement, if any, would be minimal. Such findings are amply supported by the evidence presented to the Commission.

The Commission having jurisdiction over the proposals of the IC, SCL, and CGa and the Commission's findings being based on substantial evidence, this court will not disturb the order of the Commission. The temporary restraining order now in effect is dissolved and the complaint is dismissed.