ILLINOIS COMMERCE COMMISSION, City of DuQuoin, John P. Stupp, M. S. Stuckey and Maurice F. Radrizzi, Plaintiffs,

New Orleans Traffic and Transportation Bureau and Missouri Public Service Commission, Intervening Plaintiffs,

v.

UNITED STATES of America, Interstate Commerce Commission and Illinois Central Railroad Company, Defendants.

Civ. No. 69–150.

United States District Court,
E. D. Illinois.
Oct. 23, 1970.

William J. Scott, Atty. Gen., State of Ill., Peter A. Fasseas, Special Asst. Atty. Gen., State of Ill., Keith E. Roberts, Wheaton, Ill., Jerry B. Smith, DuQuoin, Ill., Gordon P. MacDougall, Washington, D. C., John H. Haley, Jr., St. Louis, Mo., Edward W. Stubbs, Jr., East St. Louis, Ill., for plaintiff.

Louis A. Schwartz, New Orleans, La., for intervening plaintiff New Orleans Traffic and Transportation Bureau; Edward W. Stubbs, Jr., East St. Louis, of counsel.

Jeremiah D. Finnegan, Gen. Counsel, Missouri Public Service Comm., Jefferson City, Mo., for intervening plaintiff Missouri Public Service Comm.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Henry A. Schwarz, U. S. Atty., East St. Louis, Ill., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Hanford O'Hara, Atty., Interstate Commerce Comm., Washington, D. C., for defendant Interstate Commerce Comm.

John W. Foster and John H. Doeringer, Chicago, Ill., Richard E. Boyle, of Roberts, Gundlach & Lee, Belleville, Ill., for defendant Illinois Central Railroad Co.

Before SWYGERT, Chief Circuit Judge, and JUERGENS and WISE, District Judges.

JUERGENS, District Judge.

Plaintiffs bring this action to set aside an order of the Interstate Commerce Commission, hereinafter referred to as Commission, terminating investigation into the proposed discontinuance by Illinois Central Railroad Company, hereinafter referred to as I. C., of its passenger trains Nos. 105 and 106, operating daily in each direction (105 being southbound and 106 being northbound) between St. Louis, Missouri and Carbondale, Illinois.

The distance between St. Louis and Carbondale is approximately 95 miles. The trains involved are the St. Louis section of the "Panama Limited." The Panama Limited generally operates between Chicago, Illinois and New Orleans, Louisiana.

The St. Louis section connects with the main Panama Limited at Carbondale, where equipment from the St. Louis section is transferred to a separate St. Louis section. Trains Nos. 105 and 106 are presently the only trains operated by I. C. into or out of St. Louis and are the only trains operated over the line between St. Louis and Carbondale.

After hearing, the Commission entered its order permitting the discontinuance of the St. Louis section.

Pursuant to the provisions of section 13a(1) of the Interstate Commerce Act, 49 U.S.C. 13a(1), I. C., on May 28, 1969, filed a notice, together with a supporting statement, with the Commission that it would, effective July 1, 1969, discontinue the operation of the St. Louis section of the Panama Limited. Bus service was to be provided as a substitute, this being supplied by Gulf Transport Company, which is a wholly owned subsidiary of the Gulf, Mobile & Ohio Railroad Company. Notices were also mailed to the Governors of all states in which the Panama Limited is operated and posted in all of the stations served by the train between St. Louis, Missouri and New Orleans, Louisiana, all as required by statute.

On June 19, 1969, Division 3 of the Commission began investigation into the proposed discontinuance and entered an order requiring continued operations, pending hearing and decision based upon its investigation, but not for more than four months beyond the date when the discontinuance would otherwise become effective. Hearings were held in St. Louis and Carbondale.

Following completion of the hearings, the Commission on October 28, 1969 filed its report, finding that the operation of the trains in question was not required by the public convenience and necessity and that continuing the operations would constitute an undue burden on interstate commerce. On October 31, 1969, a temporary restraining order was entered, requiring the continued operation of the trains in question pending review. A petition for reconsideration was filed and denied by the Commission.

Previous to the present proceedings, the I. C. had attempted to discontinue its extension of the Panama Limited as a part of its efforts to terminate all passenger operations at St. Louis. At that time four pairs of trains were involved, three of which were local trains between St. Louis and Carbondale, which made connection with the main line trains of I. C. in Carbondale. The main line trains operate between Chicago and Birmingham or between Chicago and New Orleans. The remaining pair of trains was the Chicago-St. Louis train known as the "Green Diamond." On May 14, 1968, the Commission permitted discontinuance of the Green Diamond between St. Louis and Springfield and permitted discontinuance of two of the three St. Louis-Carbondale trains, retaining, however, the operation of trains Nos. 105 and 106 (106 was previously designated 16)—this train to continue in

operation for a period of one year. Prior to June 2, 1969, the trains Nos. 105 and 106 also made connection at Carbondale with Nos. 9 and 10, called the "Seminole," to and from Birmingham, Alabama and Jacksonville, Florida. The Seminole south of Carbondale was discontinued in June 1969, pursuant to Commission orders.

The agency report found that trains Nos. 105 and 106 operated at a deficit of $287,068 in 1967, $249,876 in 1968, and, projecting the first three months of operation in 1969, an estimated $248,- 637 for the year 1969. The average daily local patronage on No. 105 in 1968 was 18.95 and for the first three months of 1969 was 12.9, for No. 106 for 1968 6.8 and in 1969 5.4 respectively. Transferred passengers at Carbondale from No. 105 averaged 21.4 in 1968 and 12.8 for the first three months of 1969. Comparable figures for train No. 106 were 20.6 in 1968 and 15.0 for the first three months of 1969. Based upon the evidence adduced at the hearings, the Commission found that the patronage of the trains had "declined to the point of no return" and there was no hope of a future upward trend; that use of the trains at the intermediate points between Carbondale and St. Louis was "virtually nonexistent"; that mail and express business, once a major part of the passenger train revenues, had virtually disappeared due to the use of other means of transportation by the Post Office Department and the Railway Express Agency and that revenues from these sources appear to be irretrievably lost. The Commission found that the carrier could reduce annual expenses by a net sum of $248,637 if trains Nos. 105 and 106 were discontinued. Of this sum, $139,684 would be saved by withdrawing the I. C. passenger operations from the terminal at St. Louis.. The St. Louis terminal is operated by the Terminal Railroad Association. The rates are determined by a formula based on usage by the several railroads jointly using the facility on an expense sharing basis.

The Commission considered the agreement between Gulf Transport Company, a bus company, which will provide a coordinating bus service to operate in lieu of trains 105 and 106, which agreement obligates Gulf Transport to meet all I. C. trains in Carbondale for the purpose of establishing a through service between St. Louis and points south of Carbondale. The intermediate points will also be served by buses. Five buses each day each way now operate between St. Louis and Carbondale and additional buses are to be provided upon discontinuance of the trains, which would raise the figure to six buses each way. The Commission further found that "the continued operation of the trains at an uneconomical level would constitute an unnecessary and wasteful service."

The issue presented is whether the orders of the Commission, authorizing the discontinuance of the two Illinois Central trains between St. Louis and Carbondale are lawful and contain adequate findings based upon substantial evidence.

Under section 13a(1) two statutory findings are required; namely, (1) whether operation of a train is required by public convenience and necessity and (2) whether continued operation would unduly burden interstate or foreign commerce. These two findings are to be considered together rather than separately. And the public need for the train is to be balanced against any burden on interstate commerce in order to determine both the public convenience and necessity as well as the undue burden provision. Or, as stated by the Supreme Court in Southern R. Co. v. North Carolina, 376 U.S. 93, 84 S.Ct. 564, 11 L.Ed.2d 541 (1964):

All that need properly be considered under this standard, as both the language and history of § 13a(2) thus make abundantly clear, is what effect the discontinuance of the specific train or service in question will have upon the public convenience and necessity and upon interstate operations

or commerce. As the Commission has correctly summed up the matter in another case:

> "The burden [upon the carrier's interstate operations or upon interstate commerce, as expressed in section 13a(2)] \* \* \* is to be measured by the injurious effect that the continued operation of the train proposed for discontinuance would have upon interstate commerce. As is indicated by its legislative history, the purpose of section 13a(2) is to permit the discontinuance of the operation of services that 'no longer pay their way and for which there is no longer sufficient public need to justify the heavy financial losses involved.' \* \* \* "

The scope of judicial review of an order entered by an administrative agency is narrow. Judicial review of the findings of an administrative agency is quite restricted and the function of this Court is limited to ascertaining whether there is warrant in law and in fact for what the Commission has done. Unless there has been a prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. City of Chicago v. United States, 300 F.Supp. 115 (D.C.N.D.Ill., E.D., 1969) (3-judge court). City of Williamsport v. United States, 282 F. Supp. 46 (D.C.M.D.Pa., 1968) (3-judge court).

The function of this Court is to determine whether the ultimate findings of the Commission are supported by substantial evidence on the whole record and do not involve an error of law. Once it is found that the Commission's findings are supported by substantial evidence and that in arriving at its determination the Commission did not depart from the applicable rules of law, that is the end of the matter. On the other hand, the Commission's order must be reversed if, in arriving at its determination, the Commission failed to follow the applicable law or if its findings

are arbitrary and capricious and have no basis on the record as a whole. Truck Transport, Inc. v. United States, 300 F. Supp. 159 (D.C.Mo.).

Plaintiffs urge (1) that it was error for the I. C. to include information concerning substitute bus service in the section 13a(1) notice, since bus service is outside the scope of 13a(1), is not regulated by the Interstate Commerce Commission with respect to schedules, and the proposed bus service was to be supplied by a carrier which is not a party to the proceedings; that section 13a(1) is confined to a passenger train and it was error to include the bus service as an integral part of the notice; that, therefore, the Commission acted outside the scope of its authority in accepting and acting on the notice; (2) that the Commission further erred in finding the asserted joint facility expense, incurred by I. C. at the St. Louis Union Station, to be an undue burden on interstate commerce which would be removed upon the trains discontinuance, whereas, in fact the joint facility expenses are merely reapportioned upon other railroads using the station without any proven overall reduction in any asserted burden upon interstate commerce if I. C. trains are discontinued; (3) that the Commission further erred in failing to credit trains 105 and 106 with feeder value in delivering and receiving passengers from main line trains at Carbondale; that the Commission excluded all the beyond revenue without explanation; and (4) that the Commission erred in failing to reconsider the Seminole train decision in light of the inter-relationship between the two cases asserted by the Commission in the instant report.

In order to initiate the train discontinuance under section 13a(1) of the Act, the carrier must post notice of its intention in certain public places and file the notice with specified state officials as well as the Interstate Commerce Commission. These procedures were followed by the I. C. Plaintiffs charge, however, that the Commission lacked jurisdiction over the matter be-

cause the notice contained, in addition to the minimal requirements, a statement that substitute bus service would be provided by Gulf Transportation Company upon discontinuance of the trains. Plaintiffs apparently argue that making this additional insertion into the notice, beyond the bare minimal requirements, invalidates the notice. True it may be that under certain circumstances a notice might be so replete with redundant and immaterial matter that the notice would be stripped of its true purpose as a notice. Here the mere assertion that the bus service would supplant train service was not such an over-reaching as to invalidate the notice. In this conjunction, plaintiffs urge that the addition of the bus service to the notice had a tendency to lull the people into a status of complacency. Evidence of such effect, however, was not submitted to the Commission. The Court does not find such a lulling effect to have occurred. The Commission acted within the scope of its authority in accepting the notice.

As disclosed by its findings, the Commission explored the joint-facility expenses incurred by I. C. at the St. Louis Union Station and determined the cost to I. C. of maintaining these facilities. Discontinuance of these facilities which served only two of the I. C.'s trains amounted to a cost of $139,684. Plaintiffs argue that this would not be a savings to interstate commerce. I. C. utilized the station for the minimum possible number of cars. Normally, trains 105 and 106 comprise one engine, one baggage car, one coach and one sleeper.

■ The very purpose of section 13a was to provide a remedy whereby a railroad might be relieved of the burden of maintaining trains which the Commission finds are not required, balancing the burden against the need. The Commission's finding of lack of need for public convenience is in keeping with the evidence presented to it. The cost of the joint expense for the operation of the St. Louis Union Station was considered and ruled upon by the Commis-

sion. Its findings were within the scope of its authority.

■ Plaintiffs charge that the finding in respect to the feeder value in delivering and receiving passengers from main line trains at Carbondale was erroneous. The Commission found that the carrier will retain all of the feeder revenues from the Carbondale trains. There was sufficient evidence presented to the Commission upon which its finding could be made. While there was some testimony that at least a portion of this feeder value would be lost as to a very limited number of people, there was sufficient other evidence upon which the Commission could make its finding.

■ Plaintiffs also argue that the Commission erred in failing to consider the increased income tax which will be paid by I. C. as a result of the savings arising out of the discontinuance of trains and contend that the matter should be remanded to the Commission to consider the tax impact and determine whether, on balance, continued train operations should be required. This matter was raised by the protestants in their petition for reconsideration. The Commission was under no requirement to accept plaintiffs' statements regarding income savings unless substantiated by evidence.

Plaintiffs argue that the Seminole proceedings should be reopened and considered together with the instant proceeding. The Seminole proceedings resulted in discontinuance of specified trains, pursuant to order of the Commission, and on appeal to a three-judge court the decision was upheld. See: City of Chicago v. United States, 300 F.Supp. 115 (D.C. N.D.Ill., E.D., 1969).

■ These allegations are not sufficient to justify remand of this matter to the Commission for further hearing, since the Seminole matters were fully considered by the Commission and reviewed by the Court.

■ Plaintiffs' contention that the Commission did not fully explore and did not give credence to all of the evidence is

not substantiated by the record. The Commission is not required to specifically refer to and state in its report the weight it accorded to the testimony of each witness, even if that testimony is expert or is deemed by a party to be of major significance. The courts have consistently held that the Commission need not specify the weight given to any item of evidence or disclose the mental operations by which its decisions are reached. Curtis, Inc. v. United States, 225 F.Supp. 894 (D.C.Colo.); Lake Shore Motor Freight Company v. United States, 310 F.Supp. 957 (D.C.Ohio).

In its general discussion and conclusions the Commission stated: "Contentions of the parties as to fact or law not specifically discussed herein have been given consideration and found to be without material significance or not justified."

The Court finds that the ultimate findings of the Commission are supported by substantial evidence and do not involve any error of law; that the Commission did not depart from the applicable rules of law in the conduct of the hearings nor in the final decision it reached; that there is warrant in the law and in the facts for the action taken by the Commission. The Court does not find any prejudicial departure from requirements of law, nor does it find any abuse of the Commission's discretion.

The order of the Commission should be confirmed.

The above and foregoing shall be considered findings of fact and conclusions of law.

It is, therefore, the order of this Court that the findings and decision of the Interstate Commerce Commission, dated October 28, 1969, and served October 31, 1969, at 3:00 o'clock p. m. in Washington, D. C., in its Finance Docket No. 25711, Illinois Central R. Co. Discontinuance of Trains, 334 I.C.C. 853, be and the same are hereby affirmed.

It is the further order of this Court that the temporary restraining order, entered herein on October 31, 1969, be and the same is hereby dissolved.